No. 48,723

STATE OF KANSAS, *Appellee,* v. RICHARD E. JAMES, *Appellant.*

(574 P.2d 181)

Opinion filed November 5, 1977.

*Joseph D. Johnson,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The defendant, Richard E. James, was charged with first degree murder and convicted by a jury of murder in the second degree (K.S.A. 21-3402). He shot his wife following marital difficulties and a final estrangement. He was sentenced as a recidivist for a term of not less than 30 years nor more than life. This appeal followed.

At the trial defendant denied criminal responsibility by reason

of alleged insanity. A brief summary of facts surrounding the murder will suffice. The defendant and his wife had had marital difficulties while living in Reno County. The wife left the defendant and moved to Shawnee County with their three children. At the time of the incident the wife was living with another man. Defendant came to Shawnee County with a .38 caliber pistol looking for his wife. He stopped at a neighbor's house and inquired as to her whereabouts. He later found her on the road west of Topeka near 93rd Street and Auburn Road. The three children were in the car with the mother. Two of the children, ages 9 and 6, testified at the trial as to the details of the murder. The defendant stopped Sylvia's car by running it off the road. He then got out of his car, approached on foot and fired three shots into Sylvia while she was seated behind the steering wheel of her car. Two shots were fired from one side of the car and one from the opposite side. The defendant then returned to his car and drove off. Sylvia died from the three gunshot wounds fired at close range.

Defendant's first point on appeal concerns admissibility of testimony given by Norma Bernard, the mother of Sylvia. Mrs. Bernard testified over objection by the defendant that Sylvia had at one time explained certain bruises on her body by saying, "Richard beat me." The defendant on appeal contends this statement was inadmissible hearsay. The state argues that the testimony was not inadmissible hearsay because it was not elicited to establish the truth of the facts stated but to explain and justify the actions of Mrs. Bernard immediately thereafter.

In order to put the matter in proper perspective it should be noted that Mrs. Bernard did not testify in the state's case in chief. Her testimony came in rebuttal after the defendant testified in an apparent effort to cast blame upon Mrs. Bernard for prior marital problems. The defendant had testified that he was getting dressed to play baseball the morning of May 22. Mrs. Bernard came to the house and asked him how Sylvia got the bruises on her leg. In response the defendant said, "Why don't you ask her?" He then quoted Mrs. Bernard as saying, "She wouldn't tell me." Defendant further testified that Mrs. Bernard got angry, pulled a gun from her purse and pointed it at his throat.

In rebuttal the state offered the testimony of Mrs. Bernard to give her version of the encounter and to explain what precipitated

this confrontation on May 22. She testified that when her daughter was getting dressed to go to work that morning she noticed bruises on her daughter's throat, shoulders and legs. She was quite concerned and asked her daughter what was the matter and the daughter said, "Richard beat me." Mrs. Bernard testified that she then proceeded to get one of the children's pellet guns and went over to see Richard. Her version of the confrontation was quite different. She testified that she broke down after confronting him with the pellet gun, and that the episode ended with Richard saying, "I'll not hit her again."

This court has often held:

"If an utterance previously made out of court is offered in evidence merely for the purpose of establishing what was then said, and not for the purpose of establishing the truth of the statement, the testimony is not hearsay. If relevant it is admissible through the person who heard it." (*State v. Wilson,* 220 Kan. 341, Syl. 4, 552 P.2d 931. See also *State v. McClain,* 220 Kan. 80, Syl. 1, 551 P.2d 806.)

This rule is recognized in the opening paragraph of K.S.A. 60-460, the statute on hearsay, by the insertion of the qualifying phrase, "offered to prove the truth of the matter stated". In our present case the alleged statement made by Sylvia L. James to her mother was not offered by the state to prove that the defendant had previously beaten his wife. It was offered to rebut the previous testimony of the defendant and to give Mrs. Bernard's version of the encounter with her son-in-law. The alleged statement did little more than attempt to explain and justify the action of Mrs. Bernard in confronting the defendant with a gun. In addition it should be noted there was other testimony admitted during the trial to which no objection was made that defendant had beaten his wife and that she had bruises on her body. See *State v. Henson,* 221 Kan. 635, Syl. 9, 562 P.2d 51. No error was committed in admitting her testimony.

Defendant-appellant next assigns error in the giving of an instruction on voluntary drug intoxication. Although he introduced evidence that he consumed a quantity of amphetamine pills on the morning he killed his wife, he asserts he did not intend to prove drug intoxication to establish lack of specific intent to commit the crime.

Appellant argues that the testimony as to the pills was presented as a factor contributing to his already irrational state of mind. The voluntary intoxication instruction given was to the

effect that a drugged condition is not a defense if the condition is voluntarily produced, but may be considered in determining whether the defendant had the required intent or state of mind for the commission of the crime charged. He contends this instruction placed undue influence on the factor of drug intoxication and detracted from his defense of insanity.

A psychiatrist testified on behalf of defendant as to his conclusions based on interviews with the defendant in preparation for trial. He testified that defendant appeared to be functioning well and gave a good appearance. Defendant did not appear to be grossly psychotic but there were certain inconsistencies in his statements. The defendant indicated to him that he had a thought disorder which was diagnosed five years earlier at the Larned State Hospital. He exhibited a mental illness which would be aggravated by the use of amphetamine drugs. The psychiatrist concluded that on the morning of the commission of the crime this mental illness was heightened by the drugs which defendant claimed he had taken before leaving Reno County, and that defendant could not distinguish the wrongfulness of his act as a result of taking the pills coupled with his mental illness.

The question presented here is whether a trial court should instruct the jury both on the defense of insanity and on the limited effect of voluntary drug intoxication as it might bear on defendant's liability for murder in the first degree. An instruction on the effect of voluntary intoxication and an instruction on the defense of insanity may both be given when there has been evidence of alcohol intoxication which bears upon the issue of a required specific intent and when the defense of insanity is relied on by the defendant. See *State v. Boyd,* 222 Kan. 155, 160, 563 P.2d 446. In *State v. Harden,* 206 Kan. 365, 480 P.2d 53, we hold:

"Temporary insanity immediately produced by intoxication does not destroy responsibility for crime where the accused, when sane and responsible, voluntarily made himself drunk." (Syl. 7.)

K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

In the present case there was evidence of defendant's use of drugs immediately prior to the crime. There was also testimony

from the psychiatrist bearing on defendant's mental illness which the psychiatrist concluded was heightened by defendant's use of drugs to the point where defendant could not distinguish between right and wrong. The condition of the defendant produced by the use of drugs and narcotics may or may not have affected his capacity to commit crime. The principles governing alcohol intoxication of a defendant also apply to the defendant's use of drugs. It is only when the use of drugs has led to permanent mental deterioration or disease sufficient to constitute insanity that the principles relating to insanity will alone govern. (1 Wharton's Criminal Law and Procedure, § 49, p. 115. See also Anno: Voluntary Drug Intoxication as Defense, 73 A.L.R.3d, § 2, p. 105.)

Under the testimony elicited by defendant at trial the question of drug intoxication was injected as a major factor contributing to his mental condition at the time he committed the crime. There was no testimony that defendant's prior use of drugs had led to permanent mental deterioration or disease sufficient to constitute insanity. Under the evidence presented the jury was entitled to an instruction as to the effect of voluntary drug intoxication. Drug intoxication may be taken into consideration in determining a particular intent necessary to constitute the crime. (K.S.A. 21-3208 [2].) The crime of murder requires a specific intent. Therefore we hold under the evidence adduced at the trial to establish a charge of first degree murder the trial court properly instructed the jury both on the defense of insanity and on the limited effect of voluntary drug intoxication bearing upon the issue of specific intent to commit the crime.

The third point on appeal concerns a limitation placed on defense counsel's closing remarks. Dr. Pomerantz, a psychiatrist, was the only expert witness as to defendant's alleged insanity. He was called by the defendant. In the state's closing argument an attack was made on the credibility of the evaluation made by Dr. Pomerantz. Defense counsel in closing argument argued to the jury in an effort to bolster the psychiatrist's evaluation and stated:

" . . . Now, if the State was so disturbed by a psychiatric report being submitted as far as the defendant was concerned, let's just cut through another one of his smoke screens that's been presented here. Why didn't they get a psychiatrist to examine the defendant themselves?"

The district attorney objected at this point and asked to ap-

proach the bench. A colloquy among counsel and the trial judge out of the hearing of the jury ended with the following ruling by the judge:

"Well, what's been said so far is of no great significance, but I think there ought not be anything further said about it."

During the colloquy the district attorney argued that there was no prior evidence of insanity until the evaluation report of Dr. Pomerantz was handed to him the morning of the trial. This was too late for the state to obtain permission and get an independent examination of the defendant by another psychiatrist. The defense attorney pointed out that the state was notified as required by K.S.A. 22-3219 that the defendant would rely on the defense of insanity. There was plenty of time after the notice was filed to obtain an independent evaluation.

Under K.S.A. 22-3219 the defendant is required to file written notice of his intention to rely on the defense of insanity not more than thirty days after the plea. The plea was entered on July 9, 1976. The trial began on August 16, 1976. It does not appear when the written notice of the defense of insanity was filed but it must be assumed the filing was within the time limit. This would give the state at least seven days in which to obtain a separate mental examination.

We see nothing wrong with the comment of the defense counsel. However, the comment made to the jury was not stricken. The jury was not admonished in any way. We fail to see how the limitation on further repeated comment could rise to the level of reversible error. The discussion at the bench leading to the limitation on further comment was out of the hearing of the jury. Defense counsel had made his point. His statement was allowed to stand. In addition he had previously given an extended argument covering several pages of the transcript to support the credibility and reliability of the Pomerantz report. A trial court has the discretion to limit further repetitious remarks by counsel in closing arguments. The error, if any, related to the procedural, not to the constitutional, rights of defendant. The limitation in this case did not amount to reversible error. (See K.S.A. 60-2105.)

The final point on appeal concerns an alleged insufficiency in the presentence report filed with the court for the purpose of assisting in setting the sentence. Defendant concedes that K.S.A. 21-4604 which provides for a presentence investigation and re-

port is discretionary with the sentencing judge. However, he argues that once the investigation and report is requested the statute mandates what must be covered therein.

The defendant has failed to furnish this court with a copy of the presentence report and we have nothing in the record from which to examine its contents. At sentencing defense counsel complained of the lack of family statements, social history and mental examination. In response the court stated it had reviewed the presentence report and found it to be adequate.

At the trial two of the children and the mother-in-law testified concerning the family relationships and history. The defendant was sentenced as a habitual criminal. At sentencing the judge requested an evaluation from the Kansas Reception and Diagnostic Center within 90 days and noted she had the power to modify the sentence within 120 days.

Presentence reports are valuable tools and should be given close attention by sentencing judges to the end that offenders may receive fair sentences based on the best available information rather than on inadequate guesswork. Nothing could be gained in the present case by requiring a remand for sentencing. The judge was adequately informed and conscientiously considered the circumstances of the offense, the attitude of the victim's immediate family, the criminal record, social history and the present condition of the defendant. All of these factors were shown by testimony at trial which included the psychiatrist's report, testimony of family members, and evidence of prior crime. In addition the judge ordered the KRDC evaluation and report to be filed before the time for modification would expire. No error has been shown.

The judgment is affirmed.

McFARLAND, J., not participating.