547 A.2d 1189

COMMONWEALTH of Pennsylvania, Appellant,

v.

Gregory STEWART, Appellee.

Superior Court of Pennsylvania.

Argued June 8, 1988.

Filed Sept. 12, 1988.

532

Catherine Marshall, Assistant District Attorney, Philadelphia, for Com.

Frank DeSimone, Philadelphia, for appellee.

Before McEWEN, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

Appellant, the Commonwealth, appeals from the trial court's order granting a new trial to appellee, Gregory Stewart. The Commonwealth claims that the trial court erred in finding that defense counsel was ineffective for: (1) failing to present a defense at trial based upon a psychiatric disorder which was triggered by Stewart's drunken state at the time of the offense; and (2) failing to present evidence of Stewart's good character. We agree with the Commonwealth's contentions that trial counsel did not render ineffective assistance and, accordingly, we reverse the trial court's order.

Charges of robbery, recklessly endangering another person, aggravated assault, and simple assault were filed against appellee following an attack on Ronald Johnson, a cab driver, in Philadelphia. According to the record, in the early morning hours of November 9, 1983, the victim received a call to pick up a fare. When he arrived at the designated address, no one responded to his inquiry. Stewart, who was standing nearby, approached the cab and asked to be taken to a certain destination. En route, Stewart told the victim to stop the cab. Stewart then alighted from the vehicle and briefly spoke to a woman. Shortly thereafter, he returned to the cab and it proceeded on its way.

Stewart sat directly behind the victim in the cab. As the victim was driving, Stewart grabbed him from behind, covered his mouth and said "stick-up." N.T. 4/17/84 at 41. A struggle ensued and the victim let go of the steering wheel, allowing the cab to travel down a hill without control. As the victim struggled to free himself from Stewart's grasp, he saw, in the rear view mirror, that Stewart was clenching

a long, shiny object. The victim struggled to avoid being injured and turned completely around in his seat to directly confront Stewart. As the cab crashed into an iron gate, Stewart maintained his hold on the victim. For five minutes, the two men struggled in the cab while the victim screamed for help. Eventually, two passers-by responded to the victim's screams and attempted to pull Stewart off the cab driver. They were unsuccessful until a third passerby rendered aid.[1] The police arrived shortly thereafter and Stewart was placed under arrest.

Following a jury trial on April 17–18, 1984, Stewart was convicted of aggravated assault, recklessly endangering another person, and two counts of robbery. Post–verdict motions were denied and Stewart was sentenced to a term of five-to-ten years' imprisonment. Stewart secured the representation of new counsel and filed an appeal to this Court claiming, *inter alia*, that trial counsel was ineffective for failing to present evidence of his mental state. This Court, unable to determine from the record whether trial counsel had a reasonable basis for failing to introduce psychiatric evidence as to Stewart's mental state at the time of the offense, remanded the case to the trial court for an evidentiary hearing on counsel's ineffectiveness. Pursuant to this Court's order, the trial court held a hearing on July 30, 1987. The trial court subsequently ordered that Stewart receive a new trial, finding that trial counsel was ineffective for failing to present a psychiatric defense and for failing to present character testimony. This appeal followed.

■ Appellant, the Commonwealth, contends that the trial court erred in finding that defense counsel rendered ineffective assistance of counsel. Our Supreme Court has explained the appellate standard of review of a claim of ineffectiveness of counsel as follows:

1. Stewart's behavior at the time of the incident was described by the victim as "not making any sense" and that he acted "in a rage". N.T. 4/17/84 at 57. Another witness testified that Stewart seemed to go into a seizure following the incident.

534

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings.

*Commonwealth v. Davis,* 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). Counsel is presumed to be effective and the burden of proving to the contrary rests on the party alleging counsel's ineffectiveness. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

■■■ The Commonwealth first contends that the trial court improperly found that trial counsel was ineffective for failing to present psychiatric testimony concerning Stewart's mental state at the time of the crime which would have constituted a valid defense. Stewart was convicted, *inter alia,* of robbery, which contains theft as a lesser included offense.[2] Theft is the unlawful taking of the property of another with the intent to deprive him thereof. *See* 18 Pa.C.S.A. § 3921(a). The specific intent to deprive is required for a robbery conviction. Stewart, the appellee, maintains that the trial court properly found counsel to be ineffective for failing to present psychiatric evidence to negate the requisite element of specific intent to deprive.

In support of his claim of ineffectiveness at the July 30, 1987 evidentiary hearing, Stewart offered the testimony of Dr. Arthur Boxer, a Board certified psychiatrist and neurologist. Dr. Boxer focused on three sources of information in rendering an expert opinion: a review of selected court

2. 18 Pa.C.S.A. § 3701(a)(1) states in relevant part: "A person is guilty of robbery if, in the course of committing a *theft....*" (emphasis added).

records of this case; a presentence mental health report prepared by Dr. Gino Grasso; and a personal interview with Stewart.[3] Dr. Boxer explained that Stewart suffered from a mental disorder, Delayed Post–Traumatic Stress Disease Syndrome, as a result of his military service in Vietnam. In evaluating Stewart, Dr. Boxer stated:

[G]enerally, I was quite impressed by Mr. Stewart, as being a functioning member of society, who was able to deal with the stresses and strains of everyday living, without any major problems.

In reviewing the reports, concerning his event and his background, I learned that Mr. Stewart spent some time in Vietnam and was greatly stressed by the memory of his Vietnam experiences, and it seemed to me that a report of the incident of which he was charged seemed to be reminiscent of an acute altered state of consciousness, which might also be referred to as, an acute psychotic state.

By that, I mean, the individual was reported to be behaving in such a way as to be out of contact with reality.

In further eliciting the history, concerning the event, it seemed Mr. Steward was intoxicated, that night, and, in my experience, in dealing with post-traumatic stress disorders, acute psychotic reactions, and altered state of consciousness, in susceptible individuals, *with alcohol interfering with their thinking process, they may well engage in behavior for which they have no control and which is totally out of character for how they would behave if they had not been drinking.*

It seemed to me that Mr. Stewart had been sensitized by Post-traumatic Stress Disorder in Vietnam, *where the aberrant behavior might never have emerged, if he had not been drinking on the night in question, but, as much as he had been intoxicated, the underlying dis-*

---

3. Dr. Boxer saw Stewart on only one occasion, June 27, 1987.

*turbance emerged, and he no longer had any contact
with reality.*

N.T. 7/30/87 at 12–14 (emphasis added).

Dr. Boxer described Delayed Post–Traumatic Stress Disease Syndrome in the following manner:

Well, it is subjected to unrelated stress and forced to perform acts which is not in keeping with their personality, and the make-up, of course, Vietnam, one's programed [sic] to kill, and under that degree of stress, oftentimes, an individual's personality and emotional state is sensitized to what they have been forced to do, and this is relived in certain maladaptive traits, but, more importantly, if the individual has relived this by nightmares, sleep disturbances, they are often colored, as a result of the sensitization of the period of time when they were forced to live under severe, unrelenting stress.

*Now, many individuals are like this and function quite well, if they don't add any other stresses to their central nervous systems; such as, alcohol.*

*Id.* at 17–18 (emphasis added). Dr. Boxer agreed with Dr. Grasso's description of Stewart as:

... an individual who functioned well, *until such a time as he altered his state of consciousness with alcohol and the underlying stress disorder merged,* rendering him unable to act in a prudent manner, because he was out of contact with reality and behaving in an altered state of consciousness.

*Id.* at 20–21 (emphasis added). Based upon his observations, Dr. Boxer opined that Stewart could not distinguish right from wrong, did not know the nature and quality of his act and could not form the requisite specific intent to commit a crime.

In *Commonwealth v. Hicks,* 483 Pa. 305, 396 A.2d 1183 (1979), the appellant argued that the record failed to establish that he was either sane or sober, so as to be criminally responsible for his conduct. In particular, our Supreme Court was confronted with the issue of whether the possibility of an underlying pathological disorder would prevent

criminal liability from attaching where it was established that the actor was not aware of the nature and quality of the act and unable to distinguish between right and wrong. The Court acknowledged that the appellant's bizarre actions were the result of an acute psychotic episode which was induced by appellant's consumption of alcohol. Mr. Justice (now Chief Justice) Nix stated:

> It is obvious that an actor should not be insulated from criminal liability for acts which result from a mental state that is voluntarily self-induced. The evidence in this case presents an ample basis for the finding that appellant's behavior was the result of voluntary alcohol ingestion and not mental disease. Even accepting the remote possibility of the existence of a pathological disorder, *it was at best a passive condition triggered by the ingestion of alcohol.* In either event appellant was not entitled to escape the responsibility for his conduct under the *M'Naghten* Rule [*Regina v. M'Naghten,* 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843) (test for legal insanity)].

*Id.,* 483 Pa. at 311–12, 396 A.2d at 1186 (emphasis added) (footnote omitted) (citations omitted).

Similarly, in the instant case, in presenting the basis for his opinion that Stewart's mental state precluded him from forming the requisite intent to commit the crimes, Dr. Boxer stated repeatedly that the consumption of alcohol interfered with Stewart's thinking process. Dr. Boxer further stated that Stewart's underlying psychiatric disorder was triggered by his voluntary consumption of alcohol and that this disorder would not have emerged if Stewart had refrained from becoming intoxicated. Voluntary intoxication is not a defense to robbery and evidence of such intoxication is inadmissible to negate the element of intent of the offense. 18 Pa.C.S.A. § 308;[4] *see Commonwealth*

---

**4.** Section 308 of the Crimes Code states:

**§ 308. Intoxication or drugged condition**

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of

*v. Byron,* 319 Pa.Super. 1, 465 A.2d 1023 (1983). Given that a defendant is not insulated from criminal liability for crimes, other than homicide, resulting from the eruption of a psychiatric disorder triggered by the ingestion of alcohol, Stewart's claim of ineffectiveness for trial counsel's failure to introduce evidence of Stewart's mental state is meritless.[5]

> the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

5. In addition, we wish to note that in contesting the claim of ineffective assistance of counsel, the Commonwealth presented the testimony of trial counsel, Peter Maas, Esquire, an employee of the Defender's Association of Philadelphia. Mr. Maas testified that he initially prepared to represent Stewart by reviewing the notes of interviews conducted by two other attorneys who were employed by the Defender's Association: Susan Bergin, Esquire, and Sidney Kine, Esquire. According to Mr. Maas, Stewart told Ms. Bergin that he had been drinking on the evening of the arrest and that the police arrested him when he appeared at the police station to report the theft of his car. Stewart also told Ms. Bergin that he did not have any psychiatric, alcohol or drug-related problems. He did state, however, that he was drunk on the night of the incident.

According to Mr. Maas, Stewart met with Mr. Kine on February 26, 1983, and essentially recounted the same information. Stewart did not, however, acknowledge that he had been drinking.

Thereafter, Mr. Maas attempted to arrange an interview with Stewart. He sent a letter on March 9, 1984, asking that his client appear for an appointment. Stewart did not respond to the letter. Rather, he appeared unexpectedly in Mr. Maas's office on March 22, 1984. Although Mr. Maas had another commitment at the time, he briefly spoke with his client. Stewart later called Mr. Maas and promised to meet with counsel the next day. He failed, however, to keep the appointment with counsel.

Based upon the interviews with Stewart, Mr. Maas determined that Stewart could not benefit from a defense based upon either mental infirmity or alcohol abuse. Specifically, Mr. Maas concluded that because use of voluntary intoxication as a defense to any crime, except murder, is barred under 18 Pa.C.S.A. § 308, he could not prepare a defense based upon intoxication. In addition, Mr. Maas stated that because his client failed to adequately inform him of the circumstances, he had no reason to suspect that Stewart was suffering from a mental disorder. Mr. Maas explained that his decision to retain the services of a psychiatrist to examine a defendant depends, *inter alia,* on the defendant's pretrial demeanor and deportment. In this case, neither Mr. Maas nor his colleagues observed Stewart acting in a manner which indicated an inability to answer their questions about his psychiatric history or problems.

■ The Commonwealth next contends that the trial court erred in finding trial counsel ineffective for failing to present evidence of Stewart's good character. This issue was improperly raised for the first time by the trial court acting *sua sponte*. The trial court clearly erred in raising and deciding this claim of ineffectiveness on its own motion. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) (defendant bears the burden of proving that counsel was ineffective).

■ In addition, we have reviewed the record and find no factual basis for the trial court's finding of ineffectiveness. According to the record, counsel for both sides stipulated that Nannette Dedman, if she were to testify, would say that Stewart had an excellent reputation for being a peaceful, law-abiding citizen. Indeed, in his post-trial motions, Stewart challenged the trial court's charge on the use of such character evidence. The trial court held that a correct charge on character evidence had been given, and that determination was affirmed by this Court on direct appeal. Given that Stewart had the benefit of evidence establishing his good character, the trial court's finding that trial counsel was ineffective for failing to secure character evidence is clearly unsupported by the record.

Accordingly, the trial court's order granting Stewart a new trial is reversed.

McEWEN, J., concurs in the result.

Stewart denied that the incident occurred and instructed defense counsel that he would not testify at trial. Lacking any other defense strategy, Mr. Maas explained that he proceeded at trial by exploiting every weakness in the Commonwealth's case.