No. 61,474

STATE OF KANSAS, *Appellee*, v. ROBERT C. DeMOSS, *Appellant*.

(770 P.2d 441)

Opinion filed March 3, 1989.

*Karen E. Mayberry*, assistant appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Gene M. Olander*, district attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant, Robert C. DeMoss, appeals his convictions of two counts of kidnapping, one count of aggravated assault, one count of aggravated burglary, and one count of criminal damage to property, contending the trial court erred by: (1) failing to give a diminished capacity instruction; (2) giving an instruction on temporary insanity; and (3) giving a voluntary intoxication instruction that precluded the jury from considering evidence of post-traumatic stress syndrome. After reviewing the evidence, we find that the instructions given fairly stated the law and did not mislead the jury. We affirm.

Brenda DeMoss and defendant, Robert DeMoss, were married in August of 1982 and divorced in June of 1986. Brenda was employed at Leland Anderson Construction. Because DeMoss had threatened to kill Brenda and everyone who worked with her, Leland Anderson procured a restraining order in June 1986, prohibiting DeMoss from harassing Brenda at her home or place of employment. On July 23, 1986, DeMoss purchased a rifle and

then drove from Lawrence, Kansas, to the Leland Anderson Construction office in Topeka, Kansas.

When DeMoss arrived at the office, he was armed with a rifle and a clip containing eighteen rounds. He also carried a bottle of cognac. Once inside, DeMoss ordered Brenda to go to the office of Carol Scroggins, another employee, where he pulled the phone out of the wall and then forced the two women into the bathroom. A short time later, he moved Brenda from the bathroom into a break area. DeMoss talked about Vietnam, and said it was "judgment day." DeMoss stated he would shoot Leland Anderson in the head, then shoot Brenda in the head, and finally shoot himself in the heart. After Carol Scroggins joined DeMoss and Brenda in the break room, the three proceeded to the file room where DeMoss either fell asleep or passed out. The two women took the rifle from DeMoss, then went to the office next door and called the police. When the police woke DeMoss, he appeared confused and disoriented.

DeMoss was charged with two counts of kidnapping, and one count each of aggravated assault, aggravated burglary, and criminal damage to property. At trial, DeMoss relied upon the defense of insanity and presented testimony of Dr. James B. Horne, a psychiatrist.

Horne, who examined the defendant after the incident, testified that the defendant suffered from post-traumatic stress disorder (P.T.S.D.), associated with his service as a Marine in the Vietnam War. Horne explained that symptoms of the disorder include: (1) a tendency to reexperience the prior traumatic events through nightmares or daytime reveries; (2) physical symptoms such as hyperactivity, paranoia, and insomnia; and (3) vulnerability to alcohol and drug abuse. When asked how P.T.S.D. related to crime, Dr. Horne stated that veterans suffering from P.T.S.D. tend to revert to a combat mentality when they feel helpless and trapped. Horne diagnosed the defendant as also suffering from episodic alcohol abuse and cocaine abuse. Horne noted that defendant's alcohol abuse antedated his military service in Vietnam.

Horne testified that, in his opinion, these diagnoses would constitute a mental disease or defect. He further testified: "I think that the most decrippling or disturbing or the most potent condition is the post-traumatic stress disorder, and that's why I

listed it first." However, as to DeMoss' mental state at the time the crime was committed, Horne stated: "The main factor in crime alleged was alcohol intoxication, acute, with blackout, sleep deprivation. P.T.S.D. contributed to extreme behavior." On cross-examination, Horne admitted that both P.T.S.D. and alcohol intoxication contributed to the crime, but that on July 23, 1986, DeMoss was legally insane due to alcohol intoxication. Dr. Horne further testified that DeMoss had neither the capacity to understand what was going on at the time of the incident nor the ability to differentiate reality from unreality. Horne testified further:

"Q. Dr. Horne, if I understand you correctly, without the alcohol intake by the defendant, you don't think he would have—he would have done this act on July 23, 1986?
"A. Right.
"Q. Without the alcohol, he wasn't insane; was he?
"A. Right.
"Q. What were his symptoms of post-traumatic stress disorder on July 23, 1986?
"A. The, ah, the tremendous sense of injury and betrayal by a wife who had divorced him, the thinking of grabbing a gun and shooting people whenever he feels hurt or injured or made helpless, ah, the making threats, violent threats, I am going to kill you, you so-and-so and so-and-so is real standard but very rare to be actually carried out by any of our guys when they are actually sober."

At the conclusion of the introduction of evidence, the jury was instructed on the defense of insanity and on voluntary intoxication, and was further instructed that temporary insanity was not a defense if caused by voluntary intoxication. Defense counsel objected only to the last instruction. DeMoss was found guilty of all charges.

In order to understand the issues raised by DeMoss on appeal, a brief discussion of the nature of P.T.S.D. is required. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders § 309.89, 247 (3d ed. rev. 1987) (hereinafter cited as DSM III-R) classifies P.T.S.D. as an anxiety disorder. This disorder is one which may be suffered following a traumatic event which is outside the normal realm of human experiences. These events, known as "stressors," include both natural disasters and deliberate man-made disasters such as military combat, rape, assault, torture, bombing, and death camps. Stressors of human origin, such as war and military combat, produce more severe and longer lasting disorders than do natural disasters.

Perhaps the best known symptom of P.T.S.D. is the reexperiencing of the traumatic event, which can occur either through recollections of the event, recurrent dreams of the event, or a sudden acting out or feeling that the traumatic event is actually occurring at the moment. This last possibility is known as a "dissociative state" and is the rarest symptom of P.T.S.D., occurring only in extreme cases. Dreams and recollections are far more common.

Additional symptoms include numbing of responsiveness to, or involvement in, the outside world; hyperalertness or exaggerated startle response; sleep disturbances; guilt about the person's own survival or about the tactics which the person used in order to survive; memory impairment and difficulty concentrating; and avoidance of activities which may cause the person to recall the stressful event. Any and all symptoms may also be intensified by exposure to events which resemble the stressor. This becomes particularly important in terms of the dissociative state and criminal behavior. Other problems associated with P.T.S.D. which become significant when viewed in the context of criminal behavior are the person's tendency toward increased irritability, impulsive behavior, and unpredictable explosions of aggression with little or no provocation. DSM III-R at 247-51.

We observe that, in the majority of reported cases where a Vietnam War veteran has pled insanity or relied on a diminished capacity defense based on P.T.S.D, the defendant has claimed he experienced a dissociative state at the time of the crime, during which he believed he was back in Vietnam. See *State v. Felde*, 422 So. 2d 370 (La. 1982) (defendant claimed he believed he was in North Vietnam when he shot a Shreveport, Louisiana, police officer); *Miller v. State*, 338 N.W.2d 673 (S.D. 1983) (defendant escapee from prison work farm testified he believed he was in Vietnam and believed he was running back home); *United States v. Crosby*, 713 F.2d 1066 (5th Cir. 1983) (defendant claimed he was in a dissociative state). See generally Comment, *Vietnam Stress Syndrome and the Criminal Defendant*, 19 Loy. L.A.L. Rev. 473 (1985). Here, it is important to recognize that DeMoss presented no evidence that, at the time of the crime, he was in a dissociative state caused by P.T.S.D.

On appeal, DeMoss alleges that the trial judge's instructions

precluded the jury from considering the effect of P.T.S.D. on both his insanity defense and his defense of diminished capacity. The relevant instructions provided the jury are:

"INSTRUCTION NO. 11

"Voluntary intoxication is not a defense to a criminal charge, but when a particular intent or other state of mind is a necessary element of the offense charged, intoxication may be taken into consideration in determining whether the accused was capable of forming the necessary specific intent or state of mind.

"This instruction applies only to the following charges: (a) The offense of Kidnapping as charged in Count No. 1 and the specific intent to hold Brenda DeMoss in order to inflict bodily injury on Brenda DeMoss or to terrorize said victim; (b) The offense of Kidnapping as charged in Count No. 2 and the specific intent to hold Carol Scroggins to facilitate the crime of Aggravated Assault against Brenda DeMoss, or the crime of Murder against Brenda DeMoss or the crime of Murder against Leland Anderson; (c) The offense of Aggravated Burglary as charged in Count No. 4 and the specific intent to commit the felony of Aggravated Assault."

"INSTRUCTION NO. 12

"Temporary insanity immediately produced by intoxication (by alcohol or drugs) does not destroy responsibility for crime where the accused, when sane and responsible, voluntarily made himself intoxicated."

"INSTRUCTION NO. 13

"The defendant has denied criminal responsibility because of lack of mental capacity at the time the offenses were committed. In law, this is called insanity. The defendant is not criminally responsible for his acts if because of mental illness or defect, he lacked the capacity either (a) to understand the nature of his acts, or (b) to understand that what he was doing was prohibited by law.

"If you have a reasonable doubt as to his capacity to understand either, then you should find the defendant not guilty because of insanity.

"If you have no reasonable doubt that the defendant had the mental capacity at the time of the alleged offenses to understand both what he was doing and that it was prohibited by law, then you should find the defendant was not insane."

Initially, DeMoss contends that the trial court committed reversible error by failing to give an instruction on diminished capacity. Since DeMoss relied on an insanity defense at trial, this argument represents an attempt by appellate counsel to change the thrust of DeMoss' trial defense.

In the trial of a criminal action, the defendant is entitled to have an instruction setting out his theory of defense where there is any evidence whatever to support it. *State v. Hunter*, 241 Kan. 629, 644, 740 P.2d 559 (1987). We note that trial counsel did not request an instruction on diminished capacity. A party may not assign as error the giving or failure to give an instruction unless he objects to the instruction stating the specific grounds for the objection. Absent such objection, an appellate court may reverse

only if the trial court's failure to give the instruction was clearly erroneous. K.S.A. 22-3414(3); *State v. Holley*, 238 Kan. 501, 506, 712 P.2d 1214 (1986). The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict. *State v. Patterson*, 243 Kan. 262, 268, 755 P.2d 551 (1988).

In *State v. Jackson*, 238 Kan. 793, 714 P.2d 1368 (1986), we held that evidence of a defendant's diminished capacity to commit a crime is admissible to negate specific intent but not to remove criminal responsibility. 238 Kan. 793, Syl. ¶ 1. Whether the jury should be instructed on diminished capacity is left to the discretion of the trial court. 238 Kan. at 798. See *State v. Maas*, 242 Kan. 44, 52, 744 P.2d 1222 (1987).

DeMoss' contention that a diminished capacity instruction was required here is based on the premise that there was evidence that his alleged diminished capacity at the time of the crime was due to a *combination* of the effects of P.T.S.D. and drug and alcohol abuse. DeMoss asserts that the failure to give a diminished capacity instruction prejudiced him by preventing the jury from considering the effect of P.T.S.D. on his ability to form the specific intent required for the crimes charged.

DeMoss' argument on this issue is not persuasive. DeMoss' own expert, Dr. Horne, stated that at the time the crimes were committed DeMoss' mental state was the result of voluntary intoxication. The gist of Horne's testimony was that DeMoss' P.T.S.D. was an underlying passive condition which could be heightened by the consumption of alcohol. See generally *Com. v. Stewart*, 377 Pa. Super. 530, 535-37, 547 A.2d 1189 (1988).

Therefore, although P.T.S.D. may have contributed to DeMoss' penchant for alcohol intoxication, such intoxication was nonetheless the result of a *voluntary* act. K.S.A. 21-3208(2) provides that evidence of voluntary intoxication may be considered when a specific intent or state of mind is a necessary element to constitute a particular crime. In a case where a specific intent crime is charged and there exists evidence of voluntary intoxication, the court is required to give a voluntary intoxication instruction. *State v. Sterling*, 235 Kan. 526, 529-30, 680 P.2d 301 (1984). Here, the jury was given a voluntary intoxication instruction which informed it that, if it found that

defendant's diminished capacity was caused by voluntary intox-
ication, it could consider whether defendant was capable of
forming the specific intent required to commit kidnapping and
aggravated burglary. Under these facts, no separate instruction
on diminished capacity due to the effect of P.T.S.D. was re-
quired.

DeMoss' next contention, which relates to the first, is that it
was error to give the voluntary intoxication instruction because it
(1) "precluded the jury from considering the evidence of post-
traumatic stress disorder by erroneously stressing or focusing the
jury's attention on the diagnosis of episodic alcohol abuse above
that of P.T.S.D." and (2) detracted from a diminished capacity
defense. Because no objection to the voluntary intoxication in-
struction was lodged at trial, we again apply the clearly errone-
ous standard.

In *State v. James*, 223 Kan. 107, 574 P.2d 181 (1977), the
defendant was charged with first-degree murder. James intro-
duced evidence that he had consumed amphetamine pills on the
day of the crime. James' expert testified that James suffered from
a mental disorder, and that on the date of the crime this disorder
was heightened by the drug ingestion to the point where James
could not distinguish right from wrong. 223 Kan. at 110. The trial
judge, over defendant's objection, gave instructions both on
insanity and voluntary intoxication.

On appeal, James argued that the evidence of drug ingestion
was not introduced to establish lack of specific intent, but rather
to bolster his defense of insanity. We disagreed, stating that
temporary insanity immediately produced by intoxication does
not destroy responsibility for crime where the accused, when
sane and responsible, voluntarily made himself drunk, following
*State v. Harden*, 206 Kan. 365, Syl. ¶ 7, 480 P.2d 53 (1971). We
observed that the principles governing alcohol use also apply to
a defendant's use of drugs and then noted there was no testimony
that James' prior use of drugs had led to permanent mental
deterioration or disease sufficient to constitute insanity. Had
there been such evidence of permanent mental deterioration, the
case would have been governed by principles of insanity alone.
We then concluded an instruction on the effect of voluntary
intoxication and an instruction on the defense of insanity may
both be given where (1) there is evidence of intoxication which

bears upon the issue of a required specific intent, and (2) the defense of insanity is also relied upon by the defendant. 223 Kan. at 111.

*James* is controlling here and DeMoss' attempts to distinguish *James* fail. According to DeMoss' expert, DeMoss' alcohol intoxication, not P.T.S.D., was the major factor contributing to the crime. As in *James*, there was no evidence that DeMoss' consumption of alcohol was sufficient to produce "permanent mental deterioration or disease sufficient to constitute insanity." Also as in *James*, defendant here relied on an insanity defense. Therefore, the trial judge was correct in instructing the jury on both voluntary intoxication and the defense of insanity.

Finally, DeMoss contends it was error to give, over his objection, instruction 12, which stated that "temporary insanity produced by intoxication (by alcohol or drugs) does not destroy responsibility for the crime where the accused, when sane and responsible, voluntarily made himself intoxicated." Defense counsel objected to this instruction claiming it confused the jury and negated his defense of insanity due to P.T.S.D. plus intoxication.

In *State v. Seely*, 212 Kan. 195, 510 P.2d 115 (1973), the defendant (also a Vietnam veteran), on trial for aggravated battery, testified that he had been drinking heavily on the day of the crime and that he had no memory of the alleged beating of the two victims. Two psychiatrists testified that defendant suffered from a personality disorder which, when altered by alcohol consumption, could result in extremely hostile and destructive behavior. The trial judge gave an instruction similar to the instruction given here, stating that temporary insanity immediately produced by intoxication does not destroy responsibility for crime where the accused, when sane and responsible, voluntarily made himself drunk. We affirmed the trial court's refusal to give an insanity or involuntary intoxication instruction, stating: "[A]ll the expert testimony, taken in its light most favorable to appellant, indicated that alcohol was the key factor in his loss of control and the *sine qua non* of all his difficulties." 212 Kan. at 200. *Seely* thus stands for the proposition that a criminal defendant may not be entitled to an insanity or involuntary intoxication instruction when voluntary alcohol consumption triggers

an underlying personality disorder which by itself would not amount to insanity.

Unlike *Seely*, here, the jury was instructed on insanity even though Dr. Horne's testimony at trial indicated that at the time of the crime defendant was legally insane due to alcohol intoxication and not to P.T.S.D. and that alcohol intoxication was the "main factor" in the crime. According to this same testimony, DeMoss' alcohol-induced insanity was temporary and was produced by DeMoss' voluntary act. Further, DeMoss made no claim that he was experiencing a dissociative state at the time of the crime. Instead, the expert testimony indicated he was in a drunken state. Under these facts, the trial judge did not err in informing the jury that temporary insanity produced by voluntary alcohol intoxication would not relieve the defendant from criminal responsibility.

Based on the evidence, the jury could have found that DeMoss' actions were temporarily affected by his voluntary consumption of alcohol. The instructions given the jury fairly stated the law and did not mislead the jury. The jury was properly instructed.

Affirmed.