No. 63,600

STATE OF KANSAS, *Appellee,* v. MICHAEL F. OSBY, *Appellant.*

(793 P.2d 243)

Opinion filed May 25, 1990.

*Geary N. Gorup,* of Wichita, argued the cause, and *Kiehl Rathbun,* of Wichita, was with him on the brief for appellant.

*Thomas J. Robinson,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Defendant, Michael F. Osby, appeals from his jury conviction of one count of aggravated kidnapping, K.S.A. 21-3421; one count of kidnapping, K.S.A. 21-3420; and one count of unlawful possession of a firearm, K.S.A. 21-4204. Osby asks that his convictions be reversed because of trial court error in

(1) limiting his voir dire of the jury panel;

(2) instructing the jury on the issue of drug use;

(3) limiting cross-examination as to the victim/witness' drug use;

(4) excluding certain evidence relating to a different crime; and

(5) allowing the State to introduce testimony by two witnesses that was given at prior separate proceedings in which Osby was neither a party nor present.

We find no trial error requiring reversal and affirm.

## FACTS

The crimes charged against Osby occurred on January 14, 1987. They stem from the efforts of the friends and relatives of Earl Ray to find and punish the person who shot and stabbed Ray. Ray was on life-support systems at a Wichita hospital on that date. He died of his injuries the following day.

On the afternoon of January 14, 1987, Terry Brown drove Michael and Monique Johnson to a house at 2849 N. Vassar Street, in Wichita. The Johnsons went to the house to collect a debt owed them by Earl Ray. Brown waited outside of the house for 20 to 30 minutes before the Johnsons returned. They were unable to collect the money they previously had given to Earl Ray. Brown took Michael and Monique back to their house.

Later that day, Brown again took the Johnsons to the house on Vassar, apparently to try again to collect the money. Monique went into the house while Brown and Michael waited in the car. Five to ten minutes later, Osby and Robert Taylor approached the car and asked them to come into the house. When Brown expressed his reluctance, the men told Brown that Monique would be in the house for a while and that they should come

into the house. When Brown got out of the car, he saw that one of the men had a gun.

The men took Brown and Michael into the back bedroom of the house. There were several people in the bedroom, and each had a gun. Michael and Monique were searched, and Earl Ray's gun was found on Michael. Osby swung a gun at Michael and hit him in the head. The gun went off, and Michael fell into the corner. Michael had a gash in his forehead and was bleeding.

At that point, the people in the bedroom tied up Brown and the Johnsons. Osby hit Monique on the back of her head with a gun. Some of those in the room discussed taking Brown and the Johnsons out into the country and killing them.

Four or five of the people in the room took Brown and the Johnsons to the front of the house and then out to Brown's car. Once they were in the car they managed to escape and then drove to the police station and reported the incident.

Osby was charged with aggravated kidnapping of Monique Johnson, kidnapping of Terry Brown, and unlawful possession of a firearm as a result of the incidents at the house that day.

### The Voir Dire

Osby apparently was not allowed to ask the members of the jury panel during voir dire whether they had any special knowledge regarding the effect of drug usage.

Osby asserts, without explanation, that the trial court impaired his ability to utilize his peremptory challenges in a meaningful manner by stopping his juror inquiry. Osby intended to inquire whether the panel had any special knowledge with respect to drug use.

We do not have a record of the voir dire proceedings. The only indication of what happened during voir dire is the statement of Osby's attorney which was made after the jury was selected:

"The only thing I wanted to do is proffer to the Court on voir dire when I was attempting to question the panel as to any special knowledge they might have regarding the effect of drug usage, that one of the witnesses in this case will testify on the day of the alleged kidnapping Monique Johnson consumed cocaine, became very agitated, paranoid, fearful, because of the drug consumption."

The extent of examination of jurors during voir dire is within the discretion of the trial court. We will not interfere unless an

abuse of discretion is clearly shown. *State v. Guffey,* 205 Kan. 9, 13, 468 P.2d 254 (1970). There is no record of the voir dire proceedings; consequently, we cannot consider Osby's contention that the trial court abused its discretion in limiting his voir dire examination. See *State v. Wright,* 219 Kan. 808, 812, 549 P.2d 958 (1976).

### The Anticipatory Rulings

Osby also claims that the trial court embarked on a series of comments and anticipatory rulings regarding the admissibility of drug-use evidence. In support of his assertion, Osby apparently refers to the following statement by the trial court:

"We are bound by the rule of the Supreme Court of Kansas that ingestion of drugs has nothing to do with credibility, period. That's the Kansas rule. If it comes in as part of the transaction that was occurring at the time of these events, so be it. That has nothing to do with the rule announced, but right now the ruling is in conformity with the law of Kansas that you can't affect credibility by asking people about drug usage."

We have held that credibility of a witness cannot be impeached by admitting evidence of the use of drugs unless it is shown "the witness was under their influence at the time of the occurrences as to which he testifies, or at the time of the trial, or that his mind or memory or powers of observation were affected by the habit." *State v. Belote,* 213 Kan. 291, Syl. ¶ 4, 516 P.2d 159 (1973). Since the trial court's statement was generally consistent with Kansas law regarding the admissibility of evidence of drug use, Osby was not prejudiced.

### Instructions

Osby asserts that the jury instruction given by the trial court regarding whether a person's credibility could be impeached by the fact the person was under the influence of drugs was confusing and contradictory. The instruction read:

"Evidence that a witness is a user of drugs is not admissible for the purpose of affecting the witness' credibility.

"Evidence that a witness was under the influence of drugs at the time of the occurrence about which the witness testified may be considered by you along with all the other evidence in the case and be given such weight as you determine."

Osby did not object to this instruction. The instruction is not confusing or contradictory.

Prior to the time the trial court proposed giving the instruction, Osby requested the following instruction:

"Evidence showing that a witness is a user of drugs is not admissible for the purpose of discrediting the witness, nor to show the effect of the use of such drugs, unless it is shown that the witness was under their influence at the time of the occurrences to which he/she testified, or that his/her mind or memory or powers of observation were affected by the habit."

The requested instruction is essentially in accord with *State v. Belote,* 213 Kan. 291, Syl. ¶ 4.

Osby did not object to the instruction given by the trial court. K.S.A. 22-3414(3). He cannot now raise this issue on appeal. Further, it cannot be said the trial court's failure to give the requested instruction was clearly erroneous because it is unlikely the jury would have returned a different verdict had the requested instruction been given. *State v. DeMoss,* 244 Kan. 387, 391-92, 770 P.2d 441 (1989).

### Cross-Examination as to Drug Use

Osby further asserts his right to effective cross-examination and confrontation was infringed, if not denied outright. He objects to the limits the trial court placed on his attorney in eliciting testimony regarding Monique's drug use shortly before she perceived the events in question. During the course of the trial, the court told Osby's attorney that evidence of Monique's drug use was not admissible to impeach her credibility. The trial court subsequently told Osby's attorney that if he wanted to admit evidence of her drug use to attack her perception he would first have to establish that something was wrong with her perception.

On cross-examination, Osby's counsel asked Robert Taylor, who had been a participant in the Vassar Street incident, "Was Monique Johnson smoking dope in the house that day?" Taylor responded, "Yes, she was." In response to the State's objection, the trial court stated:

"Here is the situation, folks. It's improper for credibility to be attacked because someone has ingested drugs. . . . If something happened somewhere as a part of the transaction, that's just part of the transaction to be testified to, if it did happen. But you can't, it's improper and our Supreme Court has specifically ruled and that is a general rule of law that you can't attack someone's credibility by asking if they were smoking dope because

it does not affect credibility because our laws—well, that's the way our law is.

"It's not a crime of dishonesty or false statement. So you heard [the defendant's attorney] trying to bring out the consumption of dope as it was characterized here, and you have heard the prosecutor trying to keep it out and I have ruled, and we have had four hearings on this now. And I think you are mature people and you can follow the rules of law and the rules of evidence. You can't take into account credibility from the consumption of whatever this is characterized as, but if that's something that you believed happened, then you believe that's something happened.

"Is that too hard a problem?

"(REPORTER'S NOTE: Several jurors shake heads negatively.)"

Osby did not object to the trial court's statement; thus, he cannot now contend it was erroneous. *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 551-52, 731 P.2d 273 (1987). Osby's attorney then asked Taylor, "Was there any change in Monique's behavior after she smoked cocaine on the 14th of January there at the house?" The trial court prohibited the inquiry, stating, "We have had four hearings, we have had specific rulings, and there is no question about what the rulings are." Osby's attorney then asked Taylor, "What kind of substance was Monique consuming that day?" Taylor responded, "Cocaine." The State's objection was sustained.

For purposes of discrediting a witness, drug-use evidence is admissible to the extent it shows the witness was under the influence of drugs at the time of the occurrence as to which the witness testifies or at the time of trial. It is also admissible to the extent that it shows the witness' mind, memory, or powers of observation were affected by the habit. *State v. Coe*, 223 Kan. 153, 162, 574 P.2d 929 (1977); *State v. Belote*, 213 Kan. 291.

Taylor was asked about the substance Monique was "consuming that day." The inquiry was proper. *Coe* controls.

Later in the trial, the jury was presented with a full report of Monique's association with cocaine. Near the end of the trial, after the State read a portion of the prior testimony of Matthew Isaac, another participant in the Vassar Street incident, into the record, Osby's attorney read into the record, in the presence of the jury, Isaac's prior testimony about how Monique's drug use affected her. Isaac's prior testimony indicated that, when Monique went to the house on Vassar the first time, she smoked cocaine.

During the four to six months that Isaac had known Monique, he had seen her under the influence of cocaine. On January 14, 1987, Isaac saw Monique smoking cocaine for fifteen to twenty minutes and testified that she became extremely paranoid, that she could look at the wall and "freak out," and that she was frightened of things. Isaac's prior testimony further indicated that after Monique smoked cocaine on January 14, 1987, "She became very nervous. She would walk around the room and kind of, like be in a daze at everything. She was afraid of anybody coming in the room while she was smoking, no matter who it was. She just—that was how she was when she smoked cocaine."

Finally, Isaac's prior testimony indicated that Monique had a reputation for being aggressive and "physical when the situation in her opinion [called] for it." Further, testimony indicated Monique was acting that way toward Linda Williams and Edward Dixon, who were present in the Vassar Street house on January 14, 1987.

Although Monique's drug use was presented to the jury through Osby's use of Isaac's prior testimony, it was improper for the trial court to have limited the cross-examination of Monique. In view of the abundant testimony concerning Monique's drug use, the error was harmless. See *Coe*, 223 Kan. at 164.

### The Murder of Earl Ray

Osby claims the trial court erred in excluding evidence about the facts, circumstances, and charges involved in another crime, the murder of Earl Ray. Osby planned to use that evidence to attack the credibility of those prosecution witnesses who had entered into plea bargains or had been granted immunity. Osby wanted to show the jury the criminal involvement of those witnesses (Linda Williams, Monique Johnson, Robert Taylor, and Matthew Isaac) in the death of Earl Ray or in the crimes charged against Osby. He also wished to show the full details and value of the plea bargain concessions made to these witnesses for testifying against him. Because the trial court excluded this evidence, Osby asserts his right to confrontation and cross-examination was denied.

In *State v. Davis*, 237 Kan. 155, 697 P.2d 1321 (1985), defense counsel attempted to question a witness who had been a code-

fendant, but who entered into a plea agreement with the State, about the negotiations and the penalty provisions of both the original and the reduced charges. The trial court prohibited the inquiry into the penalty provisions because " 'allowing [the defendant] to make a big deal about the reduction and what all the possible consequences and ramifications of that plea are, it takes away from the question in this case, and that is the innocence or guilt of [the defendant] . . . .' " 237 Kan. at 157. This court determined that the trial court did not abuse its discretion in limiting the defendant's examination of the witness because "defense counsel was afforded the opportunity to inquire whether or not [the witness] had made any such 'deal' with the State." 237 Kan. at 158. We further stated, "[I]t lies within the sound discretion of the trial court to determine the propriety and scope of the examination and, absent a showing of a clear abuse of the exercise of the power of discretion, there is no prejudicial error." 237 Kan. at 158.

The trial court originally reasoned it could not rule on the admissibility of the evidence concerning Earl Ray's murder because it did not know how the evidence might be relevant. During Osby's cross-examination of Monique, he attempted to establish that she testified about the same events at the house on Vassar in another trial pursuant to a grant of immunity. After the State objected, Osby's attorney was unable to tell the trial court specifically to what Monique had previously testified or to explain how the facts and circumstances of Earl Ray's murder were relevant.

Nevertheless, Osby's attorney was permitted to cross-examine witnesses regarding the fact that they entered into plea agreements with the State as required by *State v. Davis*, 237 Kan. at 158. In addition, the trial court permitted Osby to elicit information beyond that which was required by *Davis*.

Matthew Isaac testified that he had pled guilty to attempted kidnapping, assault, and possession of cocaine in this matter involving the kidnapping of Monique and Michael Johnson and Terry Brown.

Monique Johnson stated she had received a grant of immunity for testifying in two other trials.

Robert Taylor, in addition to stating he had worked out a deal with the State which "saved [him] 80 years, 93 years" in the state prison, stated that he had pled guilty to kidnapping in exchange for the State's recommendation of a 5- to 20-year sentence.

Linda Williams testified on cross-examination that she had entered into a plea agreement. She stated that two cases were dismissed and that she was serving a five-year probation on the other two cases. Williams further testified she had a count of aggravated kidnapping and an unlawful possession of a firearm charge pending against her at one time and that she knew the penalty for aggravated kidnapping was 15 years in the state prison. The State objected when Osby's attorney asked Williams if she was originally charged with aggravated kidnapping, possession of cocaine, aggravated assault, unlawful possession of a firearm, and aggravated intimidation of a witness, because there were several cases involved. When the trial court instructed Osby's counsel to ask about the cases separately, he stated, "I will come back to that in a moment. I have asked my paralegal to get the court files." The defendant's attorney never "came back" to this point.

The record indicates that Osby's attorney could not state how the evidence regarding the death of Earl Ray might be relevant to this case. In addition, he was able to elicit more information regarding the plea agreements of the witnesses than that required by *State v. Davis*, 237 Kan. at 158. In fact, the testimony of Isaac, Taylor, and Williams did show the jury the "true value" of their plea agreements.

The trial court did not err in excluding testimony regarding the facts, circumstances, and charges involved in the murder of Earl Ray.

### The Use of Prior Testimony

Osby argues that the trial court erred in allowing the prosecution to introduce the transcripts of a portion of the testimony of Robert Taylor and Matthew Isaac from the trials of other defendants who were charged with crimes stemming from the events at the house on Vassar. Neither Osby nor his attorney were present and able to confront and cross-examine those witnesses.

Osby contends: (1) The trial court did not make a specific inquiry as to whether there was a reasonable indicia of reliability of the prior testimony of Isaac and Taylor as required by *State v. Cathey*, 241 Kan. 715, 741 P.2d 738 (1987); (2) even if the prior testimony is admissible under K.S.A. 60-422, it can only be used to examine the witness, and it is not independently admissible once the witness leaves the witness stand; and (3) while use of prior testimony is authorized under the hearsay statute, K.S.A. 1989 Supp. 60-460(c), its use is not allowed where it comes from a trial in which Osby was not a party.

In our analysis of Osby's argument, we note that Taylor testified that he was under oath and swore to tell the truth before giving the testimony in the prior proceeding. In addition, the transcript of Taylor's testimony was certified by the court reporter as a true and accurate copy of his testimony. At trial, Isaac stated he agreed to testify truthfully at the prior proceeding. Further, the transcript of Isaac's prior testimony was also certified as a true and accurate copy of his testimony. Finally, the prior testimony of Taylor and Isaac was consistent with the trial testimony of Terry Brown and Linda Williams. Thus, the evidence was sufficient for the trial court to determine the prior testimony of Taylor and Isaac was, in fact, reliable.

Osby also contends that, under K.S.A. 60-422, the evidence may have been admissible to examine Taylor and Isaac, but was not otherwise independently admissible after they left the witness stand because Osby then did not have the opportunity for face-to-face confrontation.

Robert Taylor was unable to remember how many people in the house on Vassar had guns because two years had elapsed since the incident occurred. At Osby's trial, the State unsuccessfully attempted to refresh his recollection by reading from a transcript of his prior testimony.

Matthew Isaac could not remember who was at the house on Vassar or his prior testimony regarding the matter. As with Taylor, the State's attempts to refresh Isaac's recollection by reading from a transcript of his prior testimony proved futile. Osby did have an opportunity while Taylor and Isaac were testifying, after the State had attempted to refresh their recollection, to cross-examine

them and to ask them to identify, explain, or deny the prior testimony.

K.S.A. 60-422 provides:

"As affecting the credibility of a witness . . . (b) extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness, may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him or her an opportunity to identify, explain or deny the statements."

When a witness' testimony contradicts his prior testimony, extrinsic evidence of that prior testimony may be admitted. In addition, the extent of cross-examination for purposes of impeachment lies within the sound discretion of the trial court and, absent proof of clear abuse, the exercise of that discretion will not constitute prejudicial error. *State v. Brown,* 235 Kan. 688, 689, 681 P.2d 1071 (1984).

Here, Taylor and Isaac testified that they could not remember some of the details of the events of January 14, 1987; however, at a different trial they were able to recall those details. When the State attempted to refresh their recollections regarding the events, they still could not remember what had happened. Thus, Taylor and Isaac's testimony in this case was contradictory to their prior testimony; therefore, the prior testimony was admissible as a matter of judicial discretion pursuant to K.S.A. 60-422(b).

Osby asserts that, even if the evidence was admissible under K.S.A. 60-422, the State must have shown an indicia of trustworthiness under *State v. Cathey,* 241 Kan. 715. *Cathey* held that if a witness is unavailable, the confrontation clause requires that the otherwise admissible hearsay statements must be shown to have an adequate indicia of reliability. 241 Kan. at 729. There was sufficient evidence from which the trial court could have concluded the prior testimony was reliable.

K.S.A. 1989 Supp. 60-460(a) contains an exception to the hearsay rule for a statement previously made by a person who is present at the hearing and available for cross-examination with respect to the subject matter, provided the statement would be admissible if made by the declarant while testifying.

In *State v. Lomax & Williams,* 227 Kan. 651, 658-62, 608 P.2d 959 (1980), this court held that, where a witness (Bagby) testified

at a codefendant's preliminary hearing but could not remember what happened at the defendant's trial, the witness was not available for cross-examination under K.S.A. 60-460(a). Bagby's prior testimony was not admissible under that statute.

However, in *State v. Hobson*, 234 Kan. 133, 146-47, 671 P.2d 1365 (1983), we determined that where the witness' testimony was affirmative, contradictory, and adverse to the party calling him, the trial court did not abuse its discretion in declaring the witness hostile, and evidence of the witness' prior inconsistent statements was admissible as substantive evidence under K.S.A. 60-460(a), as well as for purposes of impeachment. We stated that, because the witness was cross-examined by the State and defendant prior to the introduction of the extrinsic evidence, the evidence was admissible under K.S.A. 60-460. 234 Kan. at 148-49.

At Osby's trial, Matthew Isaac recalled that: He went to 2849 N. Vassar on January 14, 1987; he testified in a previous matter about these same events; he saw Monique at the house; Ed Dixon was at the house; Mike Osby was at the house; Michael Johnson was at the house; Mark Ray was there; and Linda Williams was there. Isaac did not recall: Who else was at the house; saying Taylor and Osby brought Michael Johnson into the room; saying Osby hit Michael; and most of what he had previously been asked and had previously answered. Isaac could not identify Osby in the courtroom.

Robert Taylor, at Osby's trial, remembered saying "Mike" had a gun. He did not remember saying: Osby hit Monique; Osby hit Michael Johnson; Ed Dixon asked Osby for a gun; Osby fired the gun in the bedroom; or Osby tried to prevent them from leaving.

On cross-examination, Taylor said that when he was talking at the previous trial about Michael Osby doing things, firing a gun, "stuff like that," it was another man he thought was Osby; Osby was not the man who hit Monique in the back of the head. Taylor also said Michael Johnson, the only other Michael present, did not hit anybody.

The prior testimony of Taylor and Isaac was admissible under K.S.A. 1989 Supp. 60-460(a). The facts of the instant case dictate the application of our ruling in *Hobson* rather than *Lomax &*

*Williams.* Isaac testified Osby was at the house on Vassar Street on the critical date. Taylor also testified Osby was there. At Osby's trial, their memories were selective. They did not "refuse to testify" as did the witness Bagby in *Lomax & Williams.* Bagby had stated she was not going to testify because she could not remember anything that had occurred. When on the stand, her response to *all questions* as to what had occurred on the critical day was that she did not remember. *Lomax & Williams,* 227 Kan. at 656.

Isaac and Taylor were available for cross-examination within the purview of K.S.A. 1989 Supp. 60-460(a).

The trial court did not violate Osby's right to confrontation and cross-examination by permitting the State to introduce a portion of Taylor's and Isaac's testimony from separate proceedings on a limited basis.

Affirmed.

LOCKETT, J., concurring: As in *State v. Davis,* 237 Kan. 155, 697 P.2d 1321 (1985), the majority effectively deprives a defendant of meaningful cross-examination of a State's witness who had previously entered into a plea bargain with the State. The right of cross-examination is one of the cornerstones of the United States and Kansas Constitutions.

The majority recognizes the fact that a witness entered into a plea bargain with the State is admissible to impeach that witness, but allows the trial judge discretion as to whether the jury is allowed to hear the difference in the penalty resulting from the bargain. It is the difference in the penalty that convinced the accomplice to enter a plea, and the value received by the witness for his or her testimony is relevant and subject to cross-examination.

I also disagree with the majority's categorization of the trial judge's erroneous exclusion of the results of the plea bargain as an abuse of judicial discretion. That evidence was relevant. All relevant evidence is admissible, unless prohibited by statute. K.S.A. 60-407(f). A trial judge who excludes relevant evidence does not abuse discretion, but errs. K.S.A. 60-405. If a trial judge determines that the evidence is prejudicial to the rights of the accused, the judge has discretion to exclude admissible evidence

when its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered. K.S.A. 60-445. When a trial judge erroneously excludes relevant evidence, the question is not whether the exclusion was an abuse of judicial discretion, but whether the exclusion was harmless.

I agree with the majority's conclusions that the trial judge's erroneous decision did not affect the substantial rights of the defendant and, therefore, was harmless and that reversal is not required.

MILLER, C.J., and ALLEGRUCCI, J., join in the foregoing concurrence.