NOT DESIGNATED FOR PUBLICATION

No. 127,370

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NORRIS M. HUNTER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Submitted without oral argument. Opinion filed September 26, 2025. Affirmed.

*Jessica R. Kunen*, of Lawrence, for appellant.

*Jon Simpson*, senior assistant district attorney, *Dakota Loomis*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., COBLE and BOLTON FLEMING, JJ.

PER CURIAM: Norris M. Hunter appeals the district court's summary denial of his K.S.A. 60-1507 petition alleging ineffective assistance of counsel. Norris was convicted by a jury of several crimes arising from a robbery that he claimed he was not involved in. After an unsuccessful direct appeal, he filed a timely pro se 60-1507 motion, raising seven claims of ineffective assistance of counsel. The district court appointed counsel and extended the deadline to allow Norris to file a supplemental motion, which raised eight other claims. The district court reviewed both motions but summarily denied each

1

argument, finding the motion, files, and record established that Norris was not entitled to relief. Having reviewed the record, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2017, Dakota Burke and his girlfriend, Madalyn Kruep, lived together in an apartment in Lawrence. They sold marijuana to friends out of the apartment. Ring Ringador also lived there, as Burke and Kruep's roommate. Ringador was not home when the robbery occurred, but some of his belongings were stolen.

Shortly after midnight on March 6, 2017, Burke heard a knock on the front door. He looked through the peephole but saw only darkness, so he opened the door. Two men (Robber One and Robber Two) rushed into the apartment, demanding money and marijuana. They wore dark clothing, bandanas covering their mouths, and hats and gloves. Burke could thus see only part of the two men's faces, "roughly mid cheek to their eyebrows." They pointed guns at Burke and forced him to lie on the ground. Robber One held Burke at gunpoint while Robber Two searched the apartment. Mid-search, Robber Two saw Kruep in the hallway and chased her down. He hit Kruep with his gun and forced her into the living room, next to Burke. Burke offered to help the men find money, but Robber Two told him to "shut up" and hit him on his head with the gun.

The men eventually left the apartment after taking these items:

- Kruep's wallet, which had around $800.00 in it;
- around $1,000 of cash that belonged to Burke;
- Burke's phone and wallet;
- PlayStation 4 console and controllers;
- two pairs of Beats headphones;
- money orders;

2

- clothing; and
- several jars of marijuana, one of which was labeled "Hydro Lemo."

The PlayStation console and controllers, headphones, money orders, and clothing belonged to Ringador.

Right after the robbery, Burke and Kruep contacted their marijuana supplier. Burke believed that he recognized Robber One as someone that he had hung out with a couple of times. He also thought that Robber One had been to his apartment a couple of times with his co-worker (Shaun Roberson). Burke could not remember his name but recognized his voice and his distinctively chubby cheeks. Burke contacted Jason Clissold, thinking Clissold knew both Roberson and Robber One and could help figure out Robber One's name.

Burke and Kruep then contacted the police. Officers drove to the apartment and transported them to the police station for interviewing. Burke told detectives that he thought he recognized Robber One's voice and face. Although he was not sure, Burke thought he saw that Robber One had "small dreads" or braids poking out of his hat.

While still at the police station, Burke and Kruep continued messaging Clissold. Clissold told Kruep that he was going to talk to Roberson, but Kruep asked him not to, thinking that Roberson might have been involved in the robbery. Burke continued to mull over what he thought Robber One's name was. He rattled off several names to himself before he suddenly remembered the man was named Norris. He did not know Norris' last name but reported his first name to the detectives before leaving the station. Burke later searched for "Norris" and "Lawrence, Kansas" on Facebook and found Norris' Facebook profile. Kruep took a screenshot of the profile and texted the image to detectives.

3

The police then secured and executed a search warrant for Norris' house. Norris' Mother (Barbara Harris), sister (Daiceonna Henderson), and two brothers (Tyrone and Tavaras Hunter) also lived in the house. Next to a chair in the living room, police found a PlayStation 4 console with Ringador's username, a pair of Beats headphones, and a Whole Foods grocery bag with game controllers in it. Behind the chair cushion, they discovered a jar of marijuana labeled "Hydro Lemo." Under the chair cushion, they found mail addressed to Norris, the butt of a pellet gun, and a glass smoking pipe. Upstairs, in a bedroom that belonged to Norris' brother, Tavaras, the officers found a second pair of Beats headphones, more glass jars of marijuana, and a bandana.

The officers arrested Norris and found $911 in his pocket. During a later interview, Norris told detectives that he had not left his house the previous two days other than to go to McDonald's. He explained that he generally did everything with his friend, Roberson, but Roberson had been in Wichita that weekend. As for the money found in his pocket, Norris initially stated that he had withdrawn the money from an ATM on March 6, just before he went to McDonald's. Yet later in the interview, Norris told the officers that he had received $800 from his income tax return; he claimed that he had a statement in his backpack at his house that could confirm this.

Norris also admitted that he knew about Burke. He did not know Burke's name but knew that he was a white man with long, dark hair who sold marijuana to college athletes out of his apartment. He admitted that he had previously been to Burke's apartment with Roberson. The State charged Norris with two counts each of aggravated robbery and aggravated battery and single counts of aggravated burglary and theft. The State later amended the charges to include one count of intimidating a witness for allegedly trying to dissuade his brother, Tyrone, from attending or testifying at his trial. Norris pleaded guilty to that charge before this case proceeded to trial.

4

*Pretrial Proceedings*

The district court scheduled this case for a jury trial in September 2017. But for various reasons, including discovery delays, the filing of new charges, and issues caused by unavailable witnesses—the trial date was pushed to April 2018. Before trial, Norris moved to dismiss the case on speedy trial grounds, arguing a continuance should have been charged against the State because it had failed to timely produce discovery materials. The district court denied that motion.

Another discovery issue arose after trial began. First, the State indicated that Roberson had not been interviewed by police and would not be called as a witness. So Norris' theory of defense at trial was that Tavaras and Roberson had committed the robbery. In line with this defense, Norris told the jury that despite Roberson's connection to the individuals involved, police had elected not to interview him. But on the second day of trial, the parties learned that police *had* interviewed Roberson. Norris then moved for a mistrial and the district court judge granted it due to the late disclosure.

After the mistrial, Norris again moved to dismiss with prejudice on speedy trial grounds and other reasons. The district court denied that motion, finding the discovery error about Roberson's interview stemmed from a mere oversight by a detective and not from ill will.

*Second Trial Proceedings*

The new trial lasted six days in December 2018. Norris' theory of defense was that Tavaras was Robber One and Roberson or some other third party was Robber Two. As part of this defense, Norris argued to the jury that Burke had mistaken him for his brother, Tavaras, as Robber One. He also suggested that the officers who investigated the case focused too narrowly on him and ignored other possible suspects.

5

Norris asked to call Tavaras as a witness. He noted that Tavaras had already pleaded guilty to his involvement in the crime, so self-incrimination was not an issue. Yet Tavaras' confession stated that he and Norris had committed the robbery. The State also argued that since the robbery, Tavaras' appearance had changed significantly because he had gained around 40-50 pounds. After a lengthy discussion, the district court denied the request to allow Tavaras to testify as Norris requested. Still, the district court allowed the jury to observe Tavaras standing next to the witness stand for a short time, without speaking. The district court explained to the jury that Tavaras was being called as a witness but, for legal reasons that they did not need to consider, he was not allowed to testify.

The State called several witnesses, including Burke and Kruep. Burke testified unequivocally that Norris robbed him. He was "absolutely" certain it was Norris. Burke recalled hanging out with Norris and Roberson a few times, including once about a week before the robbery. Burke also testified that the second man was not Roberson— Roberson was much taller, not as stalky, had shorter hair, and a different voice. Kruep also knew Roberson and testified that Roberson was not one of the robbers.

The jury convicted Norris of two counts of aggravated robbery, two counts of battery, and single counts of aggravated burglary, and theft. The district court sentenced Norris to 228 months' imprisonment.

*Direct Appeal*

Norris appealed, arguing two procedural errors and one constitutional violation. His procedural claims challenged the district court's denials of his request to call Tavaras as a witness and motion to dismiss based on a speedy trial violation. His constitutional claim argued the sentencing guidelines violated the Kansas Constitution's guarantee of the right to a jury trial. After reviewing the record, this court found no reversible error

and affirmed his convictions and sentence. See *State v. Hunter*, No. 121,296, 2021 WL 520678, at *7-11 (Kan. App. 2021) (unpublished opinion).

*Postconviction Motions for Relief*

After unsuccessfully petitioning for review, Norris timely filed a pro se K.S.A. 60-1507 motion. Read liberally, the motion raised seven claims of ineffective assistance of counsel, arguing trial counsel had failed to:

- Establish an alibi defense;
- properly advise him of his right to testify about an alibi defense;
- investigate other possible suspects, including by not subpoenaing Roberson's train records;
- investigate a conversation between Norris and Tavaras that two jail inmates overheard, in which Tavaras admitted to lying about Norris' involvement in the robbery and named the true perpetrators;
- preserve or investigate certain phone records for exculpatory evidence;
- investigate or consult an expert about DNA evidence on the firearm used during the robbery; and
- avoid making several trial errors, which ultimately resulted in cumulative error.

The district court appointed Norris counsel in November 2022, and she filed a supplemental K.S.A. 60-1507 motion raising eight other claims. These arguments challenged trial and appellate counsel's performances for failing to properly preserve and appeal the following alleged trial errors:

7

- The prosecutor introduced improper impeachment evidence during the direct examination of several witnesses and in doing so, elicited inadmissible hearsay;

- the prosecutor used suggestive questioning when examining witnesses which violated Norris' right to confront and cross-examine them;

- defense counsel failed to request a limiting instruction directing the jury that prior inconsistent statements could be considered only for purposes of determining the witness' credibility and not Norris' guilt;

- during closing arguments, the State relied on impeachment evidence as substantive evidence of Norris' guilt;

- defense counsel inadvertently elicited hearsay testimony showing Roberson suspected that Norris and Tavaras committed the robbery;

- defense counsel failed to ensure that the State's video exhibit of Norris' interview with police was properly redacted before the jury saw the video;

- the cumulative effect of several trial errors denied Norris a fair trial; and

- Norris' 60-1507 motion warranted a hearing.

Norris conceded that his supplemental motion was untimely. But noting that defense counsel had not been appointed until after the one-year deadline had passed, Norris asked the district court to extend the deadline to prevent manifest injustice as provided under K.S.A. 60-1507(f)(2). The district court granted this request and reviewed the merits of Norris' pro se and supplemental claims. Even so, the court summarily denied the motion, finding Norris' arguments were conclusory and failed to establish a sufficient factual basis to warrant a hearing.

Norris timely appeals.

DID THE DISTRICT COURT ERR BY SUMMARILY DENYING NORRIS' K.S.A. 60-1507 MOTIONS?

Norris challenges the district court's summary denial of his motions and argues that an evidentiary hearing was required to properly address his claims. In making this argument, he raises the same arguments that he made in his original and supplemental motions. The State counters that some of Norris' pro se claims are conclusory, unsupported by pertinent authority, or fail to designate the record, so they should be dismissed; and none of his claims warrant an evidentiary hearing.

*Standard of Review and Basic Legal Principles*

A K.S.A. 60-1507 motion is a procedure prisoners may use to challenge their conviction or sentence. *Denney v. Norwood*, 315 Kan. 163, 172, 505 P.3d 730 (2022). To succeed in a K.S.A. 60-1507 claim, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "a denial or infringement of the constitutional rights of the prisoner . . . render[s] the judgment vulnerable to collateral attack." K.S.A. 60-1507(b); Supreme Court Rule 183(g) (2025 Kan. S. Ct. R. at 238).

A district court has three options when handling a K.S.A. 60-1507 motion. First, it can find that the motions, files, and case records conclusively show that the movant is not entitled to any relief and summarily deny the motion. Second, it can find a potentially substantial issue and order a preliminary hearing to explore the matter. Finally, the court may determine from the motion, files, records, or preliminary hearing that a substantial issue warrants a full evidentiary hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). The district court here used the first option, while Norris contends it should have used the third.

When, as here, the district court summarily denies a movant's K.S.A. 60-1507 motion, this court exercises unlimited review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). This is because an appellate court is in the same position as the district court to determine whether the motion, files, and record show that the movant is entitled to relief. See *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). "'A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.' [Citation omitted.]." 300 Kan. at 881.

This court has described a conclusory argument as one made in an "'attempt[] to persuade by mere assertion and repetition. Because it offers no reasons in support of its conclusion, a conclusory argument is incapable of persuading anyone who does not already agree.' [Citation omitted.]" *State v. Ward*, 62 Kan. App. 2d 721, 732-33, 522 P.3d 337 (2022), *aff'd*, 317 Kan. 822, 539 P.3d 1042 (2023).

We liberally construe K.S.A. 60-1507 motions filed pro se. But a pro se movant must still make more than conclusory contentions and allege facts sufficient to warrant a hearing. See *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018). We will not remand for an evidentiary hearing merely to "permit a fishing expedition in the hopes that the 60-1507 movant might catch a fact that could lead to something favorable." *Stewart v. State*, 310 Kan. 39, 54, 444 P.3d 955 (2019).

*Rules specific to ineffective assistance of counsel claims*

We review claims of ineffective assistance of trial counsel under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236

Kan. 650, 656-57, 694 P.2d 468 (1985). Under that test, the movant must show that defense counsel's performance was deficient and show a reasonable probability that absent defense counsel's errors, the outcome of the trial would have been different. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022).

To establish deficient performance under the first prong, the movant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. When considering a claim of ineffective assistance of counsel, appellate courts must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance. That is, the movant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

11

*Norris' Pro Se K.S.A. 60-1507 Claims*

Norris' pro se claims argue that his trial counsel provided ineffective assistance of counsel by failing to pursue an alibi defense, by not properly discussing his right to testify about an alibi defense, and by failing to investigate certain evidence. But each argument consists of only a few sentences. And the only citation supporting these claims is to *Strickland*, for its general rule that criminal defendants are entitled to effective assistance of counsel. Norris thus fails to support any assertions of error with legal authority. "Simply pressing a point without pertinent authority is akin to failing to brief an issue, and, when an appellant fails to brief an issue, the issue is deemed waived or abandoned." *State v. Rupnick*, 280 Kan. 720, Syl. ¶ 12, 125 P.3d 541 (2005). We agree with the State that Norris has waived the issues in his pro se K.S.A. 60-1507 motion by failing to properly brief them, so we decline to review their merits.

*Norris' Supplemental K.S.A. 60-1507 Claims*

Unlike Norris' pro se petition, Norris' supplemental motion challenged the effectiveness of both trial and appellate counsel. He raised eight supplemental claims, which he posits again on appeal. Six of these argue ineffective assistance of counsel. The remaining two challenge the district court's refusal to hold an evidentiary hearing and allege cumulative error.

1. *Failure to Challenge Prosecutor's Examination of Witnesses for Violating the Confrontation Clause*

Norris first asserts that the State violated K.S.A. 60-460 (the hearsay statute) by referencing certain witnesses' prior statements to police during the prosecutor's direct examination because the witnesses were effectively unavailable for cross-examination. He explains that these witnesses were unavailable because, when examined by the

12

prosecutor, they responded that they did not know or could not remember, several times. And their unavailability for cross-examination renders their prior statements inadmissible hearsay, citing *State v. Lomax & Williams*, 227 Kan. 651, 608 P.2d 959 (1980).

In *Lomax & Williams*, our Supreme Court held that a witness' claimed memory loss about an incident that the witness had testified to during a preliminary hearing effectively rendered the witness unavailable for cross-examination. At trial, the witness responded that she did not know or could not recall the answers to any pertinent questions asked by the State. Given this complete unresponsiveness, our Supreme Court held that the witness' earlier statement was hearsay and thus inadmissible at trial. *Lomax*, 227 Kan. at 655-62.

The district court here distinguished the facts in *Lomax* and concluded that under a more recent Supreme Court ruling—*State v. Stafford*, 296 Kan. 25, 290 P.3d 562 (2012)—the witnesses in this case were available for cross-examination. After *Lomax*, our Supreme Court limited its holding in a line of cases. For example, in *State v. Osby*, 246 Kan. 621, 632-33, 793 P.2d 243 (1990), it held that a witness who answers some questions but refuses to answer others on the same matter is considered available for cross-examination. Applying that line of cases in *Stafford*, our Supreme Court held that a witness who was unable to answer some questions but could answer most of the questions the parties asked, was "available" for cross-examination under K.S.A. 60-460(a). 296 Kan. at 49-50.

The district court properly applied that rule here. It found that each of the witnesses that Norris challenged—his mother (Harris), his brother (Tyrone), and his girlfriend (Kaycee Wells)—"frequently" did not recall or denied knowing particular answers. Yet in later testimony these witnesses were "able to offer contrary statements or recall the purportedly forgotten statement to dispute some question or point of the

13

prosecutor." We agree that these facts show that the witnesses were available for confrontation purposes, under *Stafford*'s rule.

True, Norris references several instances at trial when the witnesses could not answer several pertinent questions asked by the prosecutor. But he does not contend that the witnesses could not answer any of the prosecutor's questions nor does he deny that they were able to answer similar questions asked by defense counsel on cross-examination. He thus fails to show that the district court erred by finding the witnesses were available for cross-examination, so their prior statements were not barred for lack of his ability to confront them.

Norris also asserts that trial counsel failed to "consistently preserve the issue." But he concedes that defense counsel at least "partially preserved" the alleged error for appeal by objecting to some of the prosecutor's leading questions. As to prejudice, he simply states that "[i]mpeachment of [Wells] was very damaging to the defense because the messages suggested that Norris committed the crime."

The district court found trial counsel's objections established that counsel did not act deficiently in this regard. It also found that the objections would have readily alerted appellate counsel to include the argument in Norris' direct appeal, yet the fact that appellate counsel did not do so suggested that the argument lacked merit. This analysis is sound.

2. *Failure to Challenge the Prosecutor's Examination of Witnesses for Violating Norris' Constitutional Right to a Fair Trial*

Norris raises substantially the same argument here as he raised in the previous issue. He cites *State v. Trussell*, 289 Kan. 499, 213 P.3d 1052 (2009), and argues that our Supreme Court disapproves of "suggestive" questioning. But he does not explain this

14

argument any further. He simply restates that although trial counsel lodged some objections, the issue was still not properly preserved for appeal. Having considered this in the previous claim, we do not provide additional review of this argument here.

3. *Failure to Request a Limiting Instruction*

Next, Norris argues that trial counsel needed to request a limiting jury instruction related to the State's presentation of the witnesses' prior statements, which he characterizes as impeachment evidence. He argues that the jury should have been instructed that they were legally precluded from considering the prior statements as substantive evidence of his guilt and could consider those statements solely to determine the witnesses' credibility, citing K.S.A. 60-455.

The district court rejected this claim, finding that counsel was not deficient for not requesting a limiting instruction:

"The Court does not agree that the statements were only impeachment or that it was improper for the jury to consider them as substantive evidence of Mr. Hunter's guilt.

"To take one example, shortly after the victims had their marijuana stolen, Mr. Hunter made a social media post announcing he had marijuana for sale. That statement was admitted at trial and Mr. Hunter's girlfriend was questioned about it. To the extent that her denials or inability to recall anything to do with that impeached her credibility, that does not mean the evidence could only be offered or considered for that purpose. It is properly a subject of consideration on the issue of whether Mr. Hunter participated in the robbery.

"For those reasons, it was neither improper for the jury to consider the evidence for purposes of determining guilt (meaning no limiting instruction was needed) nor improper grounds for argument. It is likewise reason to conclude that appellate counsel was not deficient for making an argument that was not likely to succeed."

15

We agree. Norris fails to show us any legal authority to support his claim that the statements could not be properly considered as substantive evidence of guilt, rather than merely as credibility or impeachment evidence.

That said, Norris cites K.S.A. 60-455. But that statute addresses prior crimes and civil wrongs, not prior statements. And the statute specifies that it "shall not be construed to limit the admission or consideration of evidence under any other rule." K.S.A. 60-455(f). So the statute does not support Norris' claim that any limiting instruction was required here.

Aside from K.S.A. 60-455, Norris references two tangentially relevant yet unpersuasive New York cases. But he does not cite any pertinent authority establishing error on this basis. We thus find this claim conclusory and unsupported.

4. *Failure to Object to Prosecutor's Statements During Closing Argument*

Similarly, Norris argues that the prosecutor made statements during closing arguments that improperly indicated that the jury could consider the witnesses' prior statements when deciding Norris's guilt. Yet trial counsel did not object.

The district court rejected this argument, restating its previous finding that the nature of the challenged evidence did not create any legitimate issue. The State asks that the issue be dismissed as inadequately briefed.

Because we have already addressed the crux of this argument, we find it unnecessary to provide an in-depth review of this claim. But we note that a contemporaneous objection is not required to preserve a prosecutorial error claim based on comments made during closing argument. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). So even if Norris had established error on this basis, the issue could still

have been raised in his direct appeal. And it should have been raised then rather than in a K.S.A. 60-1507 motion. See *State v. Brown*, 318 Kan. 446, 448-49, 543 P.3d 1149 (2024).

### 5. *Eliciting Hearsay Testimony Implicating Norris' Involvement in the Robbery*

Norris' next claim alleges that when cross-examining a detective, trial counsel elicited hearsay that indirectly implicated Norris in the robbery and opened the door for the prosecutor's questions. The State argues that this mischaracterizes the facts.

The trial transcript shows that defense counsel asked the detective whether Burke had told him that Roberson and Tavaras had had any discussion about committing the robbery. The detective responded that "there was some mention of Tavaras." Based on its review of these statements, the district court found that Norris' claim misconstrued the facts, that the detective did not provide hearsay testimony, that no statement was attributed to Roberson, and that the question was seemingly intended to show that Roberson and Tavaras committed the robbery.

Norris challenges the reasonableness of the district court's interpretation. But the State points out that Norris' defense counsel argued the same interpretation at trial and that the district court's interpretation is the only reasonable one. We agree that the district court's interpretation is reasonable and we find no hearsay testimony by this witness. Thus we find no deficient performance by trial counsel in eliciting the challenged testimony.

### 6. *Failure to Catch Unredacted Recording of Norris' Interview with Police*

In his final ineffective assistance of counsel claim, Norris argues that the State failed to redact the recording of his police interview before publishing it to the jury, even though redaction had been ordered by the district court and agreed to by the parties.

Because trial counsel did not realize that the DVD was unredacted until after he and the jury heard the damaging testimony during trial, Norris claims that his counsel's performance fell below an objectively reasonable standard.

Norris cites no support for this argument. And it does not logically follow that defense counsel should be faulted for the prosecutor's failure to comply with a court order. Defense counsel could reasonably assume that the State would redact what the court had ordered it to redact, before publishing the recording to the jury. And counsel did object to the error at trial while the DVD was being played, apparently as soon as he realized the State's failure, and the district court stopped the State from playing the rest of the recording. Norris improperly tries to transform an unasserted claim of prosecutorial error into a claim of ineffective assistance of counsel to allow review under K.S.A. 60-1507. Cf. *Ricke v. State*, No. 125,921, 2025 WL 1276884, at *5 (Kan. App. 2025) (unpublished opinion) (rejecting a prosecutorial error claim that defendant raised on direct appeal and then "repackag[ed]" as an ineffective assistance of counsel claim in a 60-1507 motion).

The district court denied this claim based on Norris' failure to adequately allege prejudice. This, too, was proper. Norris argues the error was prejudicial because the unredacted recording included a reference to his previous incarcerations. A transcript of the video shows that Norris states that he had served "a lot of time" for his brother, Tyrone. The district court also found that Norris made another statement about things that had happened "since he's been out." This would imply that he had been incarcerated.

These two swift allusions to serving time likely had little, if any, impact on the jury's considerations of Norris's guilt in this case. As our court found during Norris's direct appeal, "significant evidence" linked Norris to the robbery:

"Burke knew Norris. Norris had hung out at his apartment and played video games two or three times before. Norris' face was not completely covered; only his mouth and above his eyes were covered. Burke recognized Norris' "chubbier cheeks." Burke could see the robbers' builds. Burke thought he saw Norris' dreads. He was unequivocal in his testimony that Norris was one of the robbers. Burke was also confident Roberson was not one of the robbers.

"The police immediately searched Norris' home and found some of the stolen items in the area where Norris slept. Norris was carrying over $900 in cash. Hours before the robbery, Norris told Tyrone and his girlfriend he planned to do something that he should not do. In text messages, Norris told his girlfriend that he would not have money problems after he did 'something'. Norris' girlfriend tried to talk him out of it and asked him to let her know when he was home safe. After the robbery was over, Norris messaged her that he was home, he would 'never do this again,' and '[t]here was no killing thank god.' He told her he needed to get rid of a gun. He told her that Tavaras had committed the robbery and he was there. In messages to other people after the robbery, Norris revealed he had marijuana for sale." *Hunter*, 2021 WL 520678, at *7-8.

Norris thus fails to show that counsel's performance was deficient. Nor does he show a reasonable probability that absent defense counsel's errors, the outcome of the trial would have been different. So this claim, like each of Norris' previous claims, fails to provide a basis for reversing the district court's decision.

*Conclusion*

Norris argues that he was entitled to an evidentiary hearing and cumulative trial errors require reversal of his conviction. But we have found no trial errors. The district court properly determined that the motions, files, and case records conclusively show that Norris was not entitled to any relief. We thus affirm the district court's summary denial of Norris' K.S.A. 60-1507 motions.

19

We add that a K.S.A. 60-1507 motion cannot serve as a vehicle to raise an issue that should have been raised on direct appeal unless the movant shows exceptional circumstances excusing the failure to raise it earlier. *Brown*, 318 Kan. at 448-49; *State v. Dickey*, 301 Kan. 1018, 1030, 350 P.3d 1054 (2015) ("[A] defendant is generally required to raise all available issues on direct appeal."); see Supreme Court Rule 183(c)(3). Exceptional circumstances are unusual events or intervening changes in the law that prevented the movant from reasonably raising the issue previously. See *State v. Mitchell*, 315 Kan. 156, 160, 505 P.3d 739 (2022). Norris does not argue or demonstrate such exceptional circumstances here. He states no reason why he could not have included each of these issues in his direct appeal. And the issues he raises in his K.S.A. 60-1507 motions are the kind that are typically raised in direct appeal.

Affirmed.