NOT DESIGNATED FOR PUBLICATION

No. 127,392

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MELISSA J. HEINZMAN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Oral argument held February 10, 2026. Opinion filed May 22, 2026. Affirmed.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellant.

*Chelsea Anderson,* assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., CLINE, J., and CAREY L. HIPP, District Judge, assigned.

PICKERING, J.: Melissa Heinzman appeals from the district court's denial of her K.S.A. 60-1507 motion and request to withdraw her guilty plea based on claims of ineffective assistance of counsel after an evidentiary hearing. After review, we find that substantial competent evidence supports the district court's findings that trial counsel was not ineffective and, even if trial counsel was deficient, his performance did not prejudice Heinzman. We thus affirm the district court's ruling denying Heinzman's K.S.A. 60-1507 motion.

1

Following a 2014 drug conviction of cultivation, distribution, or possession with the intent to distribute methamphetamine, Melissa Heinzman was required to register as an offender. In 2016, she failed to register and was charged for offender registration violations (Case 1). She later pled guilty to one count of an offender registration violation. At the January 2017 sentencing hearing, the district court imposed a controlling sentence of 21 months' imprisonment but granted a downward dispositional departure to 24 months' probation. Several months later, in July 2017, she failed to report and register as an offender. The State charged Heinzman with an offender registration violation (Case 2).

In 2019, Sedgwick County Deputy Sheriff Sarah Sinnett attempted to conduct a traffic stop on a white Ford Explorer. Sinnett knew the vehicle's registered owner—Heinzman—had been involved in criminal activity and checked Heinzman for warrants. Heinzman had an active warrant, and Sinnett activated her emergency lights to stop Heinzman. Heinzman stopped her vehicle. However, when Sinnett asked Heinzman to exit her vehicle, Heinzman "freaked out" and sped off. When she sped off, Sinnett's left foot got caught in the wheel well of Heinzman's vehicle and Sinnett was dragged a short distance. Sinnett suffered a fracture and underwent surgery for the injury.

From this incident, the State charged Heinzman with aggravated battery against a law enforcement officer, a severity level 3 person felony; leaving the scene of an accident, a severity level 8 person felony; and interference with law enforcement, a severity level 9 nonperson felony (Case 3).

At her plea hearing, Heinzman pled guilty to the aggravated battery on a law enforcement officer offense in Case 3 and to offender registration violation in Case 2. The State agreed to dismiss the remaining charges. The plea agreement anticipated

Heinzman's criminal history score as F, but the presentence investigation (PSI) report placed her score as E.

At sentencing, the district court asked Heinzman if she had a chance to go over her criminal history and she responded, "No." Trial counsel explained to the court that they did not go over "each and every conviction" but they did discuss the score. The district court sentenced Heinzman to 92 months' imprisonment in Case 3 and 50 months' imprisonment in Case 2. The district court also revoked Heinzman's probation in Case 1 and imposed the underlying sentence of 21 months' imprisonment.

When asked if the State wished to argue whether the sentences should be run consecutive or concurrent, the State noted that special rule number nine required the sentences in Case 3 and Case 2 to be run consecutive to the sentence in Case 1 because Heinzman was on probation. Defense counsel responded, "Well, Judge, obviously that is true, unless the Court finds that there is manifest injustice, and we ask the Court to find that." The district court found that Heinzman did not demonstrate manifest injustice and ran the sentences in Case 3 and Case 2 consecutive to the sentence in Case 1. Regarding restitution for Sinnett's injuries, the district court ordered Heinzman to pay over $30,000 for Sinnett's medical bills.

Heinzman appealed her probation revocation. Another panel of this court found the district court did not abuse its discretion when it revoked Heinzman's probation and ordered her to serve her prison sentence. *State v. Heinzman*, No. 122,841, 2021 WL 219518, at *1 (Kan. App. 2021) (unpublished opinion).

In August 2022, Heinzman timely filed a pro se K.S.A. 60-1507 motion in Case 3 and Case 2, alleging that her plea should be withdrawn because she received ineffective assistance of counsel. Heinzman claimed that trial counsel promised she would receive a seven-and-a-half-year sentence, but she did not.

3

In December 2022, Heinzman, with the assistance of counsel, filed a K.S.A. 60-1507 motion, alleging that her plea was not knowing, understanding, or voluntary because: (1) Her attorney failed to review the discovery and the evidence in the case before entering her guilty plea; (2) trial counsel failed to review the law applicable to her case including failing to discuss lesser included offenses and possible defenses to Counts 2 and 3 of Case 3; (3) trial counsel led Heinzman to believe that she would receive a seven-and-a-half-year sentence; (4) trial counsel failed to review the PSI report with her to verify its accuracy; and (5) trial counsel failed to inform her of her duty to register as a violent offender for her conviction for aggravated battery on a law enforcement officer in Case 3.

In May 2023, Heinzman filed a motion to amend her K.S.A 60-1507 and asserted that the claims raised in the December 2022 motion related back to the timely filed pro se motion filed in August 2022. The district court agreed and set the motion for an evidentiary hearing. The State filed a motion to reconsider whether the December 30 amended motion related back to the timely pro se motion, and the district court denied the motion.

In September 2023, the district court held an evidentiary hearing. Heinzman's first defense counsel testified that he met with Heinzman only once before he went on paternity leave and later withdrew from her case. Counsel eventually left the Public Defender's office at the end of 2019.

Heinzman's second trial counsel, who "inherited the file from" Heinzman's initial counsel, testified about his representation in the case. Trial counsel testified to having 14 years of experience. When asked about presenting Heinzman with the case's discovery, he testified:

"A     I think probably our office would've sent her a copy. I don't remember what the office policy was or what the office procedure was at that time. In the Reno County office, we always send discovery to our clients. I don't—I don't remember if Sedgwick County did that or not.

. . . .

"Q     . . . But you don't have any independent recollection of providing the discovery?

"A     I didn't physically hand her anything, no."

Defense counsel later testified, "As a public defender, I would always go through the evidence. I was one of the types of lawyers who wanted to make sure I had something substantial to discuss with a client before I met with them." On cross-examination, counsel testified that he would have gone over the discovery with Heinzman. He may not have reviewed the discovery "page for page" but did provide her with his evaluation of the discovery.

When asked if he discussed the possible lesser included offenses with Heinzman, trial counsel responded, "I can't remember. I may have." Heinzman asked if trial counsel had researched *State v. Tucker*, No. 117,530, 2018 WL 3946240 (Kan. App. 2018) (unpublished opinion) (holding a jury should have been instructed on reckless battery on a law enforcement officer as a lesser included offense to aggravated battery of a law enforcement officer). Trial counsel stated, "I imagine I probably would have researched this case because I don't remember specifically—it wouldn't have been out when I tried the last aggravated battery of a law enforcement officer case."

Trial counsel testified to his discussions with Heinzman about potential sentencing:

5

"Well, if I recall correctly, she had the potential to be sent to prison for the underlying sentence in the [Case 1] probation violation, and that was extremely likely. She had the potential of having or being convicted of and having the sentence imposed in the [Case 2] offender registration case, and the possibility that if negotiations were rejected that that could be amended to a severity level three, and then of course the possible range of sentences in the instant case, which if everything ran concurrent, I believe the maximum sentence she was looking at—I think it was 92 months, but there was also a question of whether she would come back as a criminal history C or an E."

Trial counsel testified that he never promised Heinzman that she would receive seven and a half to eight years. Trial counsel explained how he communicated Heinzman's potential sentencing to her:

"I believe I told her that it was very likely that the State would get what they were asking for as far as a sentence. I told her that there was a lot of media coverage in this case, that there were eyewitnesses to the event, that the deputy was invested in prosecuting this case and testifying, and I told her that those were all factors and that it was very strongly likely that the State was going to get what they asked for, and that it was unlikely that she would be granted a departure and unlikely that she would be granted concurrent sentences within the three cases."

When asked if he discussed with Heinzman her recollection of the accident occurring, trial counsel stated, "If I recall correctly, I think she reiterated to me that she wasn't aware that she had actually run over that deputy." Heinzman questioned trial counsel about facts relevant to the issue of great bodily harm, and he responded:

"I think, if I recall correctly, the deputy was at the preliminary hearing ready to testify. I think, if I remember, they also had a medical expert there or medical records that they intended to introduce at the preliminary hearing documenting her injuries. I think I remember reviewing those in discovery that there was some pretty extensive damage to her legs, and I remember discussing with the prosecutor specifically what the injuries

6

were, how much the deputy had recovered, and how much she would expect to recover, and how much of a long-term impact that might have on her career and on her life."

*Heinzman's testimony*

Heinzman also testified. She recalled her conversations with trial counsel about the proposed plea agreement with the State: "Well, I specifically asked him, 'If I sign this, what's—what is going to happen?' He said, 'About half that time, seven and a half, eight years,' which isn't really half that time, but that's the words he said."

Heinzman testified that she received discovery after sentencing, and trial counsel did not discuss with her the evidence beforehand. When asked if trial counsel went over any lesser included offenses, possible defenses, or the medical records, Heinzman replied, "No." Heinzman could not remember talking about her criminal history score. Heinzman testified that she would have insisted on going to trial if trial counsel had discussed possible defenses, lesser included offenses, and reviewed the discovery with her. She testified that she met with trial counsel three or four times, while trial counsel testified he met with her at least five times. The State refreshed trial counsel's memory with the inmate visitation log, which showed trial counsel had visited eight times.

On cross-examination, Heinzman testified that she first interacted with trial counsel at the December 4, 2022 preliminary hearing. The State showed Heinzman an inmate visitation document, which showed trial counsel had visited her the day before, on December 3rd.

Heinzman claimed she did not know she hit Sinnett, testifying that "[a]bout an hour later my daughter called me. She said, 'Mom, the cops just were at the house. You ran over a cop.' And I said, 'No, I didn't.' She said, 'Yeah, you did.'"

7

On whether Heinzman and trial counsel discussed the possibility of going to trial, she replied, "No. I don't believe he thought it was a good idea. That's the way I felt."

The State recalled trial counsel and asked if he remembered Heinzman telling him she did not want to sign the plea agreement. He responded, "I think she probably did." But he also told her, "'It's 100 percent your choice, that you, as the client, have the ultimate right to trial.' I probably would've given my recommendation, but ultimately it's—I would've told her that, 'It's your choice.'"

After hearing Heinzman and her trial counsel's testimonies, the district court ruled on the K.S.A. 60-1507 motion:

"Conversely, I'll just note, this came out toward the end, you know, when presented documentation indicating how often [trial counsel] in particular had visited the defendant in the jail, it is directly contradictory to her recollections, so—and I'm not saying—again, to be clear, I'm not saying that Ms. Heinzman is being intentionally untruthful; I'm saying that there are some issues with her recollection about how this transpired.

"As far as the witness—the evidence that I've heard in this case, I've heard evidence indicating that these attorneys, primarily [trial counsel], discussed the case with the defendant, discussed the potential penalties that she was facing, and discussed the case. And, . . . the underlying facts of this case are that an officer stopped the defendant, and she seems to think there's a difference between a broken foot and a fracture. The fact of the matter is that whenever she chose to flee the scene, there was an officer who was injured by a 3,000-plus pound vehicle, and whether her foot got caught in the [wheel well] or whether she got fully run over is irrelevant.

. . . [I]t appears that [trial counsel] made it clear that if this case were to proceed to trial, based on the pendency of the registration violation as well as this case itself, that she was facing substantial prison time and potentially looking at all counts being run consecutive as well as all cases being run consecutive."

The district followed its bench ruling with a written journal entry of judgment. The district court found that defense counsel, "reviewed discovery with [Heinzman], reviewed potential outcomes of both trial and plea, and reviewed the plea offer with [Heinzman]." And trial counsel "secured a plea agreement that dismissed counts 2 and 3 of [Case 3], which reduced [Heinzman's] sentence by up to 16 months . . . ."

When weighing the witnesses' credibility, the district court found:

"The court finds that inconsistencies in [Heinzman's] testimony and her admitted use of illegal drugs, as well as claiming to not know the consequences of her plea on registration requirements when she was already a registered offender when these cases were charged, gives it no choice but to find trial counsels' testimony more credible. Moreover, trial counsels are officers of the court and are sworn to be candid with the court. No evidence was proffered that trial counsels lied or had reason to lie. The court therefore finds no reason to doubt that they take their oaths seriously and are therefore more credible than [Heinzman]."

The district court denied Heinzman's K.S.A. 60-1507 motion.

Heinzman appealed.

ANALYSIS

*Preservation*

The State alleges we do not have to reach the merits of the issues because Heinzman's amended motion does not relate back to her timely pro se motion. The State also contends the allegations in the pro se motion were conclusory and insufficient as a basis to hold a hearing. The State acknowledges that it did not cross-appeal this issue

9

below but argues we may still hear this argument because the district court could be affirmed as correct for the wrong reason.

K.S.A. 60-2103(h) requires appellees who desire review of adverse rulings to give notice of cross-appeal within 21 days after a notice of appeal has been served. An appellate court will not affirm a district court because it was right for the wrong reason when the district court addressed the alternative basis to affirm and rejected it. *Lumry v. State*, 305 Kan. 545, 554, 385 P.3d 479 (2016).

Here, the district court addressed whether Heinzman's amended motion related back and ruled adversely to the State. Although the State filed a motion to reconsider with the district court, which the district court denied, the State failed to file a cross-appeal. Accordingly, we will not disturb the district court's ruling with respect to Heinzman's amended motion relating back to her pro se motion.

*Standard of Review and the Rules We Follow*

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2026 Kan. S. Ct. R. at 242). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Peters*, 319 Kan. 492, 499, 555 P.3d 1134 (2024).

> "Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must

show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different.

"To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy.

"Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations omitted.]" *State v. James*, 319 Kan. 178, 184-85, 553 P.3d 308 (2024).

I.    *Substantial Competent Evidence Supported the District Court's Findings*

Heinzman argues her trial counsel gave constitutionally deficient assistance when trial counsel failed to review discovery and evidence with her; failed to discuss relevant law and possible defenses with her; and provided incorrect advice on the range of possible penalties Heinzman faced.

11

A. *Substantial competent evidence supported the district court's finding that trial counsel reviewed the discovery with Heinzman.*

Heinzman claims she received ineffective assistance of counsel because she did not receive a copy of her discovery until after she was sentenced and trial counsel provided inconsistent testimony on if he reviewed the medical records with her. Heinzman contends she learned Sinnett suffered a fracture, not a broken leg, after her sentencing.

The State contends the district court determined trial counsel was more credible because of Heinzman's inconsistent testimony.

Substantial competent evidence supports the district court's finding that defense counsel reviewed the discovery with Heinzman, and defense counsel was not ineffective because he did not go over "page for page" the discovery with Heinzman.

In *State v. Shields*, 315 Kan. 131, 134, 504 P.3d 1061 (2022), Shields filed a postsentence motion to withdraw plea, alleging defense counsel was ineffective when counsel did not provide Shields "with discovery including 'inconsistent exculpatory statements' by the former girlfriend; 'video and DVD/CD statements by all State witnesses; all photos; the toxicology report and portions of the autopsy report, and evidence of false statements by' several State witnesses." The district court denied Shields' motion, finding defense counsel was more credible and did review the evidence with Shields. The Supreme Court affirmed the district court because substantial competent evidence supported the district court's finding that defense counsel reviewed all the discovery with Shields. 315 Kan. 141.

Here, substantial competent evidence supports the district court's finding that defense counsel reviewed the discovery and evidence with Heinzman. When asked

whether defense counsel ever went over any of the evidence in the case, Heinzman responded, "No." She also testified that she did not receive any of her discovery until after she was sentenced. While defense counsel acknowledged that he did not go over the discovery "page for page" with Heinzman, he would have given her his "evaluation of it."

On direct examination, when trial counsel was asked whether he went over the medical records and the element of great bodily harm, he responded:

"I think I remember reviewing those in discovery that there was some pretty extensive damage to [the deputy's] legs, and I remember discussing with the prosecutor specifically what the injuries were, how much the deputy had recovered, and how much she could expect to recover, and how much of a long-term impact that might have on her career and on her life."

Trial counsel testified that he reviewed the discovery and gave Heinzman his evaluation of the discovery. When asked for clarification about what he told Heinzman about discovery, trial counsel said:

[T]ypically I'll bring a file over with me, but because of our requirement to only allow the client to see redacted copies, I wouldn't have shown her anything that I thought had—on a page that I thought had material that would've had to be redacted on it, so a lot of times I will read the pertinent parts of what I thought was notable in the reports, eye witness testimony, what the deputy said, and certainly entries to the medical records as far as the extent of the injuries."

Although, the district court found that trial counsel did not physically hand over discovery to Heinzman, "[a] defendant's right to assistance in his or her defense does not translate to a constitutional right to personal copies of discovery, particularly when that discovery was already provided to his or her attorney." *State v. Marks*, 297 Kan. 131,

13

149, 298 P.3d 1102 (2013). The State provided trial counsel with the discovery, and trial counsel gave Heinzman his evaluation of the discovery.

Heinzman asks us to reweigh the evidence and make credibility determinations, which we cannot do. See *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018). Trial counsel did not give inconsistent testimony; he consistently stated he went over the medical evidence and the injuries with Heinzman. And the district court found, "Whether you call it broken or whether you call it fractured, the fact is a bone was broken as a result of this incident." Substantial competent evidence supported the district court's finding that trial counsel went over the discovery with Heinzman.

1.    *The district court did not err when it made credibility determinations.*

Heinzman argues that, when the district court made credibility determinations, it improperly considered Heinzman's use of drugs and duty of candor to the court. But we do not assess witness credibility, and great deference is given to a district court's credibility determinations. 308 Kan. at 504.

Heinzman cites *State v. Osby*, 246 Kan. 621, 626, 793 P.2d 243 (1990), for the proposition that "drug-use evidence is relevant to credibility 'to the extent it shows the witness was under the influence of drugs at the time of the occurrence as to which the witness testifies or at the time of the trial.'" But *Osby* also states: "[Drug-use evidence] is also admissible to the extent that it shows the witness' mind, memory, or powers of observation were affected by the habit." 246 Kan. at 626.

Here, the district court found that Heinzman had difficulty with her ability to recall, noting that the documented eight times that defense counsel met with her in the jail was "directly contradictory to her recollections." The district court was not characterizing

14

Heinzman as on drugs or under the influence during the plea hearing or the K.S.A. 60-1507 evidentiary hearing. Rather, the court was suggesting that Heinzman's drug use may have affected her memory or recall. Similarly, the district court did not state trial counsel was more credible simply because he was a lawyer with a duty of candor to the court, but that trial counsel's testimony was not inconsistent and Heinzman did not show that he was falsely testifying.

Even if Heinzman is correct that two of the three bases for the district court's credibility determinations were improper, the court's finding that defense counsel was more credible because of inconsistencies in Heinzman's testimony was proper. The district court noted, "[W]hen presented documentation indicating how often [trial counsel] in particular had visited the defendant in jail, it is directly contradictory to her recollections." The district court found that "there are some issues with [Heinzman's] recollection about how this case transpired." Substantial competent evidence supported the district court's credibility determination that the inconsistencies in Heinzman's testimony and trial counsel's consistent testimony made trial counsel more credible.

2. *Trial counsel did not perform deficiently when he did not explain the collateral consequences of the plea.*

Heinzman also argues that trial counsel performed deficiently when he did not discuss her duty to register. She contends the district court erred when it found that Heinzman understood her duty to register "[s]imply because [Heinzman] had to register as a drug offender." But the district court found this because Heinzman "had already been in the system for a substantial period of time and was already required to register as an offender." The district court correctly stated that, due to Heinzman's earlier drug offense, which required her to register, she would have been familiar with the duties involved with offender registration.

15

Trial counsel's failure to inform his or her client of the collateral consequences arising from a plea agreement does not amount to constitutionally deficient representation. *State v. Barahona*, 35 Kan. App. 2d 605, 612, 132 P.3d 959 (2006). The Kansas Supreme Court has specifically held that KORA provisions are not intended to be punishment but are nonpunitive and civil in nature. *State v. Meredith*, 306 Kan. 906, 911-12, 399 P.3d 859 (2017). Because a KORA requirement is not punishment, trial counsel did not perform deficiently when he did not go over the collateral consequences of the plea.

B.    *Trial counsel did not fail to discuss relevant law and defenses.*

Heinzman contends trial counsel did not perform any legal research for possible defenses to the charges of offender registration and aggravated battery of a law enforcement officer. She alleges trial counsel failed to inform her of the lesser included offenses, such as reckless aggravated battery of a law enforcement officer. Heinzman claims trial counsel performed deficiently when he failed to research a possible defense under *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015), because Heinzman could not recall hitting Sinnett with her vehicle so she could not have acted "knowingly."

The State argues that trial counsel is not required to advise a defendant of every possible lesser included offense if the case were to proceed to trial. The State asserts that trial counsel performed research on possible defenses to the offender registration charge and aggravated battery of a law enforcement officer charge. The State claims that *Hobbs* does not require a defendant to cause the specific resulting harm; the defendant must know that his or her actions would result in a reasonably certain harm.

In *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014), Kelly argued trial counsel was ineffective because the record did not show Kelly understood that, if he rejected the plea, went to trial, and was "convicted of a lesser included offense" instead of

16

first-degree murder and aggravated robbery, he could have been sentenced as a juvenile. The operative facts established Kelly went into a liquor store, stole money, carried a sawed-off shotgun, and killed someone. The *Kelly* court held a district court did not err when it denied a motion to withdraw plea based on ineffective assistance of counsel when the appellant did not establish a "reasonable basis to believe a lesser included offense instruction might have been given at his trial." 298 Kan. at 971.

Here, substantial competent evidence supported the district court's finding that the lesser included instruction may not have been given at trial. Although trial counsel did not go over the lesser included offenses, the district court found:

> "As to the possibility of not discussing lesser-includeds, again the record reflects that [trial counsel] did discuss the elements of the crimes charged, and, again, although there is a case that was cited by defense, I'm not sure that if these facts had come out the way they did at the plea hearing and potentially the way they would've come out in a preliminary examination, I'm not so sure a lesser-included instruction would've been justified given the fact that a vehicle was used, given the fact that a bone was actually broken. Whether you call it broken or whether you call it fractured, the fact is a bone was broken as a result of this incident. I'm not so sure a lesser included instruction would've been justified in this case."

The district court did not err when it found that trial counsel did not perform deficiently when he did not inform Heinzman of the lesser included offenses.

C.    *Trial counsel was not deficient in his advice as to possible sentence.*

Heinzman contends that trial counsel was deficient because the acknowledgment of rights and entry of plea stated the fine's maximum amount as $500,000 for both the aggravated battery of a law enforcement officer charge and offender registration violation when, in fact, the maximum amount was $300,000. See K.S.A. 21-6611(a)(2). She also

17

argues that the acknowledgment of rights and entry of plea misinformed her of the postrelease supervision term because it stated the postrelease supervision term as 36 months for the offender registration violation, a severity level 5 nondrug offense, when the postrelease term is 24 months. See K.S.A. 22-3717(d)(1)(B).

The State argues Heinzman did not raise the issues of being misinformed as to the maximum fines and period of postrelease supervision for the offender registration violation at the district court, and we should not consider these issues. The State is correct.

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). The Kansas Supreme Court has warned that Rule 6.02(a)(5) would be strictly enforced and litigants who failed to comply risked a ruling that the issue was improperly briefed and would be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014).

Heinzman did not raise the issues of being misinformed as to maximum fines and the postrelease supervision term with the district court, and she did not explain why these issues should be considered for the first time on appeal.

In Heinzman's K.S.A. 60-1507 motion, she originally alleged trial counsel failed to inform her of possible penalties. She argued trial counsel failed to discuss that her sentences were required to run consecutive; trial counsel did not review the accuracy of her criminal history score; and trial counsel did not inform Heinzman of her duty to register. Heinzman's K.S.A. 60-1507 motion alleged:

"The plea documents themselves were insufficient to adequately apprise Ms. Heinzman of the consequences of her plea given the plea agreement did not reference the specific sentence that could be imposed, but merely gave a sentencing range, and did not reference the duty to register upon conviction, and Ms. Heinzman's plea was not fairly and understandingly made."

Because Heinzman did not raise these issues before the district court and fails to cite a reason why they should be raised for the first time on appeal, we are unable to review the unpreserved issues of the possible fine and postrelease supervision term.

Heinzman also argues that trial counsel failed to inform her of the special sentencing rule requiring her sentences to be run consecutively. She alleges trial counsel told her that the sentence would be "seven and a half, eight years." And she contends that trial counsel never informed her the district court would have to find manifest injustice to not run the sentences consecutive.

In *Wilkinson v. State*, 40 Kan. App. 2d 741, 744-45, 195 P.3d 278 (2008), Wilkinson pled guilty in exchange for the State's recommendation of a concurrent sentence. Without holding an evidentiary hearing, the district court denied Wilkinson's K.S.A. 60-1507 motion alleging trial counsel was ineffective when he failed to inform Wilkinson of the manifest injustice standard to overcome the requirement that his sentence be run consecutive. The *Wilkinson* panel found that "[w]ithout knowing about the manifest-injustice standard, Wilkinson could not reasonably judge the value of the State's sentencing recommendation, which was made in exchange for his plea." 40 Kan. App. 2d at 744-45. The panel found that Wilkinson was not informed of the "substantial obstacle he'd have to overcome." 40 Kan. App. 2d at 745.

Here, while trial counsel did not discuss the manifest injustice standard, he did inform Heinzman that the sentences would almost certainly run consecutive. Trial counsel told Heinzman that: "it was very likely that the State would get what they were

asking for as far as a sentence," and "the State intended on asking . . . all three sentences . . . to all run consecutive." Trial counsel informed Heinzman of the substantial obstacle or the "almost certain[]" possibility that the sentences would be run consecutive.

The State told the district court before the plea, "The parties acknowledge that the special rule for a crime committed while on felony probation applies in both cases." And the plea colloquy indicates Heinzman was not coerced and understood the plea agreement.

"THE COURT: The only parties to that plea agreement are you, your attorney, and the [S]tate's attorney. I am not a party to the agreement. That means I can impose any legal sentence, even if it's not in the plea agreement. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: That means in addition to these cases running consecutive to any other cases that you're currently on probation for, the court can also impose the sentence pursuant to the guidelines and run these cases—the instant cases consecutive to each other. Do you understand that?

"THE DEFENDANT: Yes, sir."

On the question of whether trial counsel promised a specific sentence, the plea colloquy establishes:

"THE COURT: Have any promises or threats other than what's in the plea agreement been made to you to get you to enter into this agreement?

"THE DEFENDANT: No.

"THE COURT: Is the decision to plead guilty to these accounts yours or someone else's?

20

"THE DEFENDANT: Mine."

Substantial competent evidence supported the district court's findings that Heinzman knowingly and understandingly entered the plea and the likelihood of the court imposing consecutive sentences.

II.     *Heinzman Fails to Establish Prejudice*

Heinzman argues that trial counsel's deficiencies prejudiced her because had she known that "[Sinnett's] foot wasn't broken; it was just a fracture" and "the first report [Sinnett] gave to the ambulance [said] that [Heinzman] didn't even run over her; that her foot got caught in the wheel well and spun her around," Heinzman would have insisted on going to trial.

To establish prejudice, Heinzman must show she "would have insisted on going to trial instead of entering [her] pleas under the circumstances." See *Kelly*, 298 Kan. at 974. At the K.S.A. 60-1507 hearing, Heinzman testified that she would have insisted on going to trial and she initially did not want to enter the plea. Trial counsel also testified that Heinzman may have stated she did not want to enter the plea. But Heinzman was not prejudiced because, under the circumstances, the plea resulted in dismissal of charges and less prison time.

In *Kelly*, Kelly asked his attorneys to enter plea negotiations because he recognized and feared that he would receive a greater sentence if he went to trial— possibly a hard 25 or hard 40 sentence. The *Kelly* court held that Kelly failed to establish prejudice because it was "apparent he entered his pleas with the specter of harsher punishment looming if he chose to go to trial—a risk that remained regardless of the information he alleges was withheld." 298 Kan. at 974.

21

Here, in exchange for Heinzman's plea, the State dismissed two felony charges which would have increased the penalties she faced. The district court found that trial counsel's performance did not prejudice Heinzman because "[trial counsel] secured a plea agreement that dismissed counts 2 and 3 of [Case 3], which reduced [Heinzman's] sentence by up to 16 months pursuant to the sentencing guidelines and ran both cases consecutive to each other." Even if trial counsel performed deficiently, there is not a reasonable probability that she would have insisted on going to trial, where she risked a harsher punishment, rather than entering her plea. The district court did not err in denying Heizman's K.S.A. 60-1507 motion.

Affirmed.